**ATCOR, INC., Sawhill Tubular Div. Cyclops Corp., and Wheatland Tube Corp., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

Zenith Steel Pipes & Industries, Ltd., and Gujarat Steel Tubes, Ltd., Intervenors.

Court No. 86–03–00351.

United States Court of International Trade.

March 12, 1987.

Schagrin Associates (Roger B. Schagrin and Paul W. Jameson, Washington, D.C., on the motion), for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director Commercial Litigation Branch, Civ. Div., Dept. of Justice (A. David Lafer, Washington, D.C., on the motion), for defendant.

Kaplan Russin & Vecchi (Dennis James, Jr. and Kathleen F. Patterson, Washington, D.C., on the motion), for defendant-intervenors.

## MEMORANDUM OPINION

CARMAN, Judge:

Pursuant to Rule 56.1 of the Rules of this Court, plaintiffs move for judgment upon the agency record challenging the final affirmative determination of the International Trade Administration of the Department of Commerce (ITA or Commerce) in its antidumping investigation in *Certain Welded Carbon Steel Standard Pipe and Tube From India,* 51 Fed.Reg. 9089 (March 17, 1986). Plaintiffs contest that part of the determination which finds Zenith Steel Pipes & Industries, Ltd. (Zenith)[1] and Gujarat Steel Tubes, Ltd. (Gujarat)[2], the defendant-intervenors herein, were not selling welded carbon steel pipe (pipe and tube or standard pipe and tube) in the United States at less than fair value.

Plaintiffs contend that the ITA's decision to add to United States price (USP), pursuant to 19 U.S.C. § 1677a(d)(1)(C)(1980 & Supp.1986), the amount of indirect taxes paid in the home market on inputs and the export rebate was not in accordance with law. Defendant United States and the defendant-intervenors take the position that the adjustments were proper since the ITA determined pipe and tube sold in India incurred certain taxes; whereas exported pipe and tube were exempt from these taxes either in the form of rebates or exclusions.

This Court holds the ITA's decision to make an adjustment to USP under § 1677a(d)(1)(C) in the amount of indirect taxes paid in the home market was in accordance with law. Although, the exported merchandise was produced from imported inputs that incurred no indirect taxes, the noncollection of these taxes was "by reason of the exportation."

The ITA may make an adjustment to USP for the export rebate to the extent it verifies indirect taxes were imposed upon the exported merchandise. Because it does not appear that the ITA verified the full extent of taxes incurred, a remand is necessary.

### FACTS

In July of 1985, the Standard Pipe and Tube Subcommittee of the Committee on Pipe and Tube Imports and each of the member companies who produce standard pipe and tube filed a petition with the ITA. The petitioners contended imports of pipe and tube from India were being, or were likely to be, sold in the United States at less than fair value.

The ITA determined petitioners had provided sufficient grounds upon which to initiate an antidumping duty investigation. The ITA notified the International Trade Commission which determined there was a reasonable indication imports of standard pipe and tube were materially injuring or threatening material injury to a United

---

**1.** Zenith is a public limited company incorporated in India.

**2.** Gujarat is also a public limited company incorporated in India.

States industry. 50 Fed.Reg. 37608. Petitioners then alleged the existence of critical circumstances.

In October and November, 1985, three Indian manufacturers of standard pipe and tube, Zenith, Gujarat, and Tata Iron and Steel Co., Ltd. (TISCO) responded to questionnaires presented to them by the ITA. Since these companies supplied more than 60% of the exports of pipe and tube to the United States, the investigation was limited to them. All of their sales of standard pipe and tube to the United States between February 1, 1985 and July 31, 1985 were investigated.

On December 31, 1985, the ITA made an affirmative preliminary determination of sales at less than fair value. 50 Fed.Reg. 53356. The ITA also determined critical circumstances did not exist with respect to imports of pipe and tube for Zenith and Gujarat but did exist for the third company, TISCO.

In its final determination, the ITA determined standard pipe and tube from India were being, or were likely to be, sold in the United States, and critical circumstances did not exist. The ITA directed the United States Customs Service to suspend liquidation of all entries of the subject merchandise except that produced and exported by Zenith and Gujarat.

By a motion for judgment upon the agency record, plaintiffs challenge that part of the final affirmative determination which excludes Zenith and Gujarat and determined these companies were not selling standard pipe and tube in the United States at less than fair value. Plaintiffs contend certain adjustments made by the ITA to United States price pursuant to 19 U.S.C. § 1677a(d)(1)(C) were not in accordance with law.

At the center of the controversy are two tax payments and one export rebate of taxes. The first tax is a Steel Development Fund levy (SDF). The SDF is included within the price of a ton of steel when sold by the Steel Authority of India, Ltd. (SAIL). The second tax is a Central Sales Tax (CST). This is a 4% *ad valorem* tax paid on nearly all sales transactions in In-

dia. The CST is included within the price of steel when sold by SAIL. Upon collection, both taxes are remitted to the Indian government. Cash Compensatory Support (CCS) is a program partially designed to rebate indirect taxes incurred in the manufacture of exported merchandise. In the instant action, defendant-intervenors, Zenith and Gujarat received 5% of the value of pipe or tube exported to the United States in the form of a rebate.

Zenith and Gujarat produce pipe and tube for sale in both the domestic and export markets. During the period of investigation, all pipe and tube sold in the Indian market by Zenith and Gujarat were manufactured from domestically produced steel. All pipe and tube exported to the United States by them, however, were made from imported steel. In addition, all steel imported by Zenith and Gujarat was imported pursuant to an advance licensing scheme which exempted them from a 100% countervailing excise duty (CVED) provided they subsequently exported the pipe and tube made therefrom. The ITA verified all steel imported was subsequently exported during the period of investigation.

When Zenith and Gujarat purchase steel from SAIL for use in the manufacture of standard pipe and tube to be sold in the domestic market, the 4% *ad valorem* CST and the SDF are collected. Conversely, when Zenith and Gujarat purchase imported steel for use in pipe and tube exported to the United States, no CST or SDF is incurred since foreign suppliers of steel, unlike SAIL, do not pay the CST or the SDF.

In its final determination, the ITA added to USP the amount of the CST and SDF that was uncollected on exported steel from India where the tax was imposed on similar steel in the Indian home market. Petitioners contended the adjustment is incorrect because the taxes are not collected because of *importation* and not by reason of *exportation* as required by the statute. Section 1677a(d)(1)(C) directs the ITA to make an adjustment for taxes not collected by reason of *exportation*. The ITA explained that since these taxes are included

in the price of the domestic product but are not included in the price of the exported product, an adjustment is appropriate. *See* 51 Fed.Reg. at 9091.

The ITA also made an adjustment for the CCS export rebate of indirect taxes, the ITA found, were imposed upon inputs utilized in the manufacture of the exported merchandise. Petitioners contended it was not shown that the pipe and tube incurred any indirect taxes.[3] The parties have stipulated that the ITA verified that packing materials used for export shipments incurred the 4% CST and a 10% excise tax. The actual amount of taxes incurred is nevertheless unclear. No other indirect taxes incurred by the exported pipe or tube have been verified.

## BACKGROUND

The antidumping law is designed to protect domestic industries from sales of foreign merchandise at less than fair value which cause or threaten to cause material injury. To achieve this objective, the law requires the imposition of an antidumping duty in the amount by which foreign market value (FMV) exceeds USP. 19 U.S.C. § 1673 (1980 & Supp.1986) The statute provides the means for determining both FMV and USP. Various upward and downward adjustments are then made to achieve comparable prices.

One of these adjustments directs the ITA to account for taxes imposed upon home market sales but not upon export sales. The relevant provision states:

(a) **United States price.**—For purposes of this subtitle, the term "United States price" means the purchase price, or the exporter's sales price, of the merchandise, whichever is appropriate.

. . . .

(d) **Adjustments to purchase price and exporter's sales price.**—The purchase price and the exporter's sales price shall be adjusted by being—

(1) increased by—

. . . .

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation;

19 U.S.C. § 1677a. This adjustment has two components. First, USP is to be increased by the amount of taxes imposed in the country of exportation directly on the exported merchandise which have been rebated or not collected by reason of the exportation. Second, the adjustment is limited to the amount such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation.

## DISCUSSION

The first question presented for decision is whether or not the ITA was correct in adding to USP an amount equal to indirect taxes paid in the home market when the exported merchandise was produced from imported inputs and incurred no indirect taxes.

Plaintiff contends that since the CST and SDF are imposed only when SAIL sells steel to users, and plaintiff used imported steel to manufacture the exported merchandise, the noncollection of taxes in this

---

**3.** The ITA response, although not entirely clear, was as follows:

*Comment 5:* Petitioners argue that the Department should not make an addition to the United States price for the CCS indirect tax rebate because no indirect taxes are actually "added to or included in the price of such or similar merchandise when sold in the country of exportation."

*DOC Response:* We disagree. Under Section 772(b)(1)(C) [sic] we add to the United

States price indirect taxes that would be included in the home market prices. For hot-rolled coil and zinc used to produce pipe and tube for the home market we verified that the companies paid a Central Sales Tax. Therefore, since this tax was not collected on the material inputs used to produce pipe and tube exported to the United States, we made an addition to the United States price, as required by the statute.

51 Fed.Reg. at 9091.

case was by reason of the importation of the inputs not the exportation of the pipe and tube. The advance license is not the reason why the CST and SDF are not collected. The taxes are not collected because of the nature of these taxes. If Zenith and Gujarat had imported the steel but failed to export the finished product, duties would have been paid, but the CST and SDF would not have been incurred. Plaintiff further argues the ITA may not make an adjustment in the amount of taxes assessed in the domestic market. Rather, the ITA must make an adjustment in the amount of taxes that would have been collected on the exported merchandise had it been sold in the home market. Due to the nature of the CST and SDF, no taxes would have been collected had the exported merchandise been sold in the home market. Thus, no adjustment to USP should have been made.

The defendant, United States, contends the advance license scheme provides an inextricable link between all importations and exportations thus evidencing that the noncollection of the CST and the SDF is by reason of the exportation. Defendant maintains the legislative history of the adjustment provision does not support the conclusion that no adjustment should be made because indirect taxes were not collected by reason of the importation. Plaintiff is seeking to elevate form over substance. If the ITA did not make an adjustment for the CST and SDF, dumping margins would exist merely because India assessed taxes on domestic but not export sales. Such a result would conflict sharply with clearly-articulated congressional intent and require unnecessary administrative adjustment for alleged dumping margins where no dumping exists.

The intervenors take the position that the advance license scheme supplies a direct link between the importation of steel and the exportation. In other words, exemption from the CST and SDF would not have occurred but for the importation of the raw material and the subsequent exportation of the finished product. Hence noncollection of the taxes was as much by reason of the export as the import. The intervenors further argue the amount of taxes that would have been collected on the merchandise had it been sold in India was the amount of taxes for which an adjustment was made.

In reply, the plaintiff contends the government's argument that an inextricable link exists should not be considered since agency action must be upheld on the basis given by the agency, not post-hoc rationalizations. According to the plaintiff, the ITA never considered the "by reason of the exportation" language of the adjustment provision. In essence, the ITA made an adjustment merely because taxes were incurred in the home market. The defendant's argument that because of high tariffs, the decision to export must be coupled with the decision to import is erroneous, since the defendant has not proven imported steel inclusive of the duties is more expensive than domestic steel. Plaintiff maintains the ITA is wrongly attempting to achieve tax neutrality. Finally, plaintiff contends the statute requires that taxes must have been added to or included within the price of the exported merchandise when sold in the home market to justify an adjustment.

▇▇▇▇ The standard for review of this determination is whether or not the determination is supported by substantial evidence on the record or otherwise in accordance with law. This test permits only a limited review of the agency record. *Carlisle Tire & Rubber Co. v. United States*, 9 CIT ——, 622 F.Supp. 1071, 1074–75 (1985). Much deference is to be afforded the body whose expertise is in the administration of the antidumping law. *Smith-Corona Group v. United States*, 713 F.2d 1568, 1571 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). Furthermore, the agency's interpretation need not be the only reasonable construction. *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 11, 104 S.Ct. 2778, 2782 n. 11, 81 L.Ed.2d 694 (1984). This interpretation need only be sufficiently reasonable to be upheld. *Federal Election Comm'n v. Democratic Sen. Camp. Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

■ In reviewing agency action, the Court must base its decision upon the administrative record. New evidence may not be received. *Abbott v. Secretary of Labor,* 3 CIT 54, 55 (1982) [Available on WESTLAW; DCTU database]. The Court must rely upon the rationale articulated by the agency. It may not rely upon post-hoc rationalizations. *ILWU Local 142 v. Donovan,* 10 CIT ——, Slip Op. 86–28 (March 13, 1986).

■ When the issue concerns the valuation of merchandise, the determination made by the ITA is presumed correct. *F.W. Myers & Co., Inc. v. United States,* 72 Cust.Ct. 219, C.D. 4544, 376 F.Supp. 860 (1974). The Court may nevertheless inquire into the correctness of the ITA's construction of the statutory language. In this respect, the Court may give weight to the ITA's interpretation of the statute. *City Lumber Co. v. United States,* 64 Cust.Ct. 826, A.R.D. 269, 311 F.Supp. 340 (1970), *aff'd,* 59 CCPA 89, C.A.D. 1045, 457 F.2d 991 (1972).

At the center of this dispute is the construction of the language at 19 U.S.C. § 1677a(d)(1)(C). The wording of this provision bears repeating in pertinent part:

(d) **Adjustments to purchase price and exporter's sales price.**—The purchase price and the exporter's sales price shall be adjusted by being—

(1) increased by—

....

(C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, *by reason of the exportation* of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation;

§ 1677a(d)(1)(C) (emphasis added).

Plaintiff contends no adjustment to USP should have been made because the noncollection of the CST and SDF was by reason of the importation. Since these taxes are imposed only when SAIL sells the steel to manufacturers, and plaintiff purchased the steel from foreign suppliers, plaintiff claims the noncollection of taxes was by reason of importation. In other words, plaintiff opts for a literal interpretation of § 1677a.

In *Roquette Freres v. United States,* 7 CIT 88, 583 F.Supp. 599 (1984), this Court construed the meaning of the words "by reason of the exportation" in § 1677a(d)(1)(B). At issue was the ITA's decision not to add to USP the amount of an export rebate given for import levies whether or not such duties were incurred. In ruling that no adjustment should be made, the Court held that there must be a sufficient connection between the rebate given and the duties imposed. Since the receipt of the rebate was not conditioned upon payment of an import levy, the Court held a direct link sufficient to justify the adjustment was lacking. In other words, when there is a direct connection between the levy and the rebate, the rebate is "by reason of the exportation." *See also Huffy Corp. v. United States,* 10 CIT ——, 632 F.Supp. 50 (1986).

The *Roquette* Court did not decide whether or not an adjustment is warranted when inward processing[4] is utilized since the plaintiff did not use the arrangement. The Court nevertheless suggested inward processing may supply a sufficient link between the levies and the refunds.

The pertinent question is therefore whether or not there is a direct connection between the noncollection of the CST and the SDF and the subequent exportation. Defendant contends advance licensing provides an inextricable link between the importations and exportations indicating the noncollection of the CST and SDF is by reason of exportation.

This contention, while embellishing upon the responses made by the ITA in the final

---

**4.** Inward processing is a system whereby imported goods are exempt from duties if subsequently exported.

determination, neither modifies nor conflicts with the rationale articulated by the agency. It is therefore not a post-hoc rationalization which this Court may not consider. On the contrary, the ITA must have concluded the noncollection of the CST and SDF was "by reason of the exportation" since such a conclusion was the condition precedent for making an adjustment.

*Roquette,* moreover, supports the defendant's contention that the CST and SDF are exempt by reason of the exportation. Noncollection of these taxes would not have occurred but for the importation of steel that under an advance license, was to be subsequently exported. The scheme was not unlike inward processing which the *Roquette* court suggested might satisfy the direct link approach adopted.

Although plaintiff is correct that advance licensing supplies the link necessary to justify an adjustment for duties rebated or not collected, this scheme also supplies the link necessary to justify adjustment for the taxes not collected. If Zenith and Gujarat had not imported steel, which they were obligated to export, the CST and SDF would have been collected, in part because presumably, the only other alternative would be to purchase steel from SAIL. The Indian government may have determined that since it contemplated the export of pipe and tube made from imported steel, it would not impose taxes upon the merchandise to compensate for the noncollection of the CST and SDF. Although it is not possible to tax foreign suppliers of steel, the Indian government could have adopted an alternative approach for levying upon the exported merchandise.

Advance licensing supplies a sufficient link between the noncollection of taxes and the exportation despite any cost advantages plaintiff attributes to the imported merchandise. Thus, even though the defendant has not shown that imported steel inclusive of duties is more expensive than domestic steel inclusive of taxes, the evidence establishes that an equivalent amount of steel imported was subsequently exported. In other words, if the imported steel was cost advantageous, as the plaintiff contends, Zenith and Gujarat would have presumably sold the pipe and tube made from imported steel in India. The evidence, however, clearly shows this was not the case.

This conclusion is also in accordance with the legislative history underlying § 1677a. The adjustment is designed to achieve comparable prices. It was believed necessary to prevent dumping margins from arising merely because taxes are imposed upon domestic sales but not upon export sales. *See* S.Rep. No. 16, 67th Cong., 1st Sess. 12 (1921)[5].

The parties agree that if the ITA had not made an adjustment for the CST and SDF, dumping margins would exist. Thus, it was appropriate for the ITA to have made an adjustment for the noncollection of these taxes.

In *Zenith Electronics Corp. v. United States,* 10 CIT ——, 633 F.Supp. 1382 (1986), this Court considered certain methodology employed by the ITA in the final results of an administrative review of an antidumping finding. Plaintiffs contended the ITA violated the clear mandate of 19 U.S.C. § 1677a(d)(1)(C) by reducing FMV by the amount of commodity taxes assessed on home market sales rather than increasing USP by the amount of tax not

---

**5.** This concept has been incorporated into the General Agreement on Tariffs and Trade (GATT), Article VI(3) of which provides:

No product of the territory of any contracting party imported into the territory of any other contracting party shall be subject to anti-dumping or countervailing duty by reason of the exemption of such product from duties or taxes borne by the like product when destined for consumption in the country of origin or exportation, or by reason of the refund of such duties or taxes.

General Agreement on Tariffs and Trade, *opened for acceptance* Oct. 30, 1947, art. VI(3), 61 Stat. A3, A24, 4 Bevans 639, 55 U.N.T.S. 194. Technically, the United States did not accept the GATT. Instead, the United States conditionally signed the Protocol of Provisional Application of the General Agreement on Tariffs and Trade, *signed* Oct. 30, 1947, 61 Stat. A2051, 4 Bevans 687, 55 U.N.T.S. 308.

collected on exports to the United States. In holding that the ITA must increase USP rather than decrease FMV, the Court stated the ITA must make an adjustment "in the amount of tax that would have been assessed on the exported merchandise had it been sold in the home market (rather than the amount of tax actually assessed on merchandise sold in the home market)." *Zenith,* 633 F.Supp. at 1390.

Plaintiff contends *Zenith* controls the determination of the amount of adjustment to be made pursuant to § 1677a. Accordingly, no adjustment to USP should have been made since the amount of taxes that would have been assessed on the exported merchandise had it been sold in the home market is zero.

The practical result of making no adjustment to USP sharply conflicts with clearly-articulated congressional intent that dumping margins not arise merely because taxes are collected on home market sales but not on export sales. Such a result cannot be endorsed by this Court. The decision to add to USP the amount of taxes collected in the home market was appropriate.[6]

In sum, the ITA's decision to add to USP the amount of taxes collected on home market sales under 1677a(d)(1)(C) was substantially in accordance with law. These taxes were not collected by reason of the exportation. The ITA also properly adjusted USP by the amount of taxes collected in the home market since the legislative history firmly establishes an adjustment is appropriate.

The second question presented for decision is whether or not the ITA was correct in adding to USP the amount of the rebate given to Zenith and Gujarat upon exportation of the merchandise. In the final determination, the ITA indicated that it verified that Zenith and Gujarat paid a CST on hot-rolled coil and zinc used to produce pipe and tube for the home market. *See* 51 Fed.Reg. at 9091.

Plaintiff contends the ITA may not consider the taxes borne on home market sales. The ITA rather should be concerned only with the indirect taxes incurred by the export sales. Furthermore, it was not shown that the exported pipe and tube bore any taxes. If the rebate was intended to compensate for the CST and SDF, the ITA should not have made the adjustment since there would have been two adjustments made for the same taxes. To the extent the rebate exceeds the amount of indirect taxes incurred, plaintiff argues, the amount should be treated as a subsidy.

The defendant and the defendant-intervenors argue that the ITA determined and verified in the companion countervailing duty investigation that Zenith and Gujarat bore taxes well in excess of the rebate given. Furthermore, the defendant contends to determine the propriety of a rebate, the test is whether or not the indirect tax is paid on an import physically incorporated into the final product. If it is, then the nonexcessive rebate of it is appropriate. Because packing materials are physically incorporated into the final product, an adjustment made for the rebate thereof is appropriate.

---

**6.** If, in accordance with plaintiff's suggestion, no adjustment is made, the absolute margin of dumping would be equal to the amount of pretax dumping plus the amount of the tax imposed the home market. Where pretax dumping does not exist dumping margins will arise merely because India taxes home market sales but does not tax export sales.

Assume the pretax home market price of pipe and tube is equal to $100, while the purchase price for pipe and tube made from imported steel when sold for export to the United States is $100. The tax free absolute margin of dumping is $0 ($100 − $100).

Suppose the CST and SDF are equal to 15%. The tax on the home market sale equals $15 (15% of $100). The after tax home market price

equals $115 ($100 + $15). If no taxes would be collected if sold in the home market, and USP is increased by zero, the adjusted USP equals $100. The absolute margin thus becomes $15, an amount equal to the amount of pretax dumping ($0) plus the amount of tax ($15).

In holding the ITA properly made an adjustment in the amount of taxes collected in the home market, this Court is not implying the ITA may employ any methodology that achieves tax neutrality. Rather, this Court holds, in accordance with the standard of review governing this proceeding, that the adjustment performed by the ITA in this case was in accordance with § 1677a(d)(1)(C) and the legislative history underlying the provision.

The defendant-intervenors contend that two adjustments were not made for the same taxes since Zenith and Gujarat paid other indirect taxes. These taxes, moreover, exceeded the rebate given.

In its reply, plaintiff contends the defendant is engaging in post-hoc rationalizations. In the final determination, the ITA made an adjustment for the rebate given after it determined merely that pipe sold in the home market incurred the CST on zinc and hot-rolled coil. Now the defendant is arguing that the exported pipe and tube in fact incurred taxes in excess of the rebate. Furthermore, the ITA has not verified these taxes were incurred. The ITA may not rely upon the verifications made in the companion countervailing duty investigation since Zenith and Gujarat were apparently not using imported steel at that time. Plaintiff contends chemicals and paint are not incorporated into the final product. Verification, moreover, must await the first administrative review if remand results in the issuance of an antidumping duty order.

The evidence establishes that the ITA verified some of the taxes incurred in the manufacture of the exported merchandise. They verified that packing materials used for export incurred the 4% CST and a 10% excise tax. No other taxes were verified. The parties have also stipulated that one of the purposes of the CCS is to rebate indirect taxes incurred in the manufacture of the exported merchandise. The actual amount of taxes incurred, however, is unclear.

A review of the record in this case does not reveal the defendant has modified the rationale articulated by the agency. Whatever discrepancies may exist seem due to the ITA's understanding of the statutory adjustment for the CST and SDF incurred in the domestic market. In commenting upon the adjustment made for the rebate given Zenith and Gujarat, the ITA stated: "we add to the United States price indirect taxes that *would be* included in the home market prices." 51 Fed.Reg. at 9091 (emphasis added). Although this statement seems ambiguous, the record presented for review in this case indicates the ITA did not consider only the amount of taxes incurred in the home market sales.

The evidence does not appear to show the ITA made two adjustments for the same taxes. Since the purpose of the CCS scheme is to rebate indirect taxes incurred in the manufacture of the exported merchandise, the ITA was authorized to consider, and in fact considered, the amount of other indirect taxes incurred by the exported merchandise.

Section 1677a(d)(1)(C) allows an adjustment in the amount of taxes imposed in India directly upon the merchandise exported to the United States which have been rebated by reason of the exportation. The adjustment is allowed only to the extent such taxes are added to or included in the price of such or similar merchandise when sold in India. This provision allows for an adjustment in the amount of taxes paid that are rebated. It does not allow adjustment for simply any amount that has been rebated.

■ The ITA must further verify, to the extent possible, all information relied upon in making a final determination. *See* 19 U.S.C. § 1677e(a) (1980 & Supp.1986). Verification is necessary to enable the Court to properly evaluate the results of the final determination. *Al Tech Specialty Steel Corp. v. United States,* 6 CIT 245, 575 F.Supp. 1277 (1983), *aff'd,* 745 F.2d 632 (Fed.Cir.1984).

Although the ITA verified that some taxes were incurred by the exported merchandise, it is not clear whether or not these taxes were equivalent to the rebate given. It is therefore necessary to remand for a determination of the amount of taxes paid and rebated. Upon remand, the ITA may adjust USP only to the extent it verifies these taxes were paid and rebated.

In verifying, the ITA is authorized to use the best information available, *see* § 1677e, as long as the information utilized is reasonably accurate. Although the Court gives no direction, it would seem to be entirely reasonable for the ITA, in this determination, to rely upon information verified in the companion CVD determina-

tion if the underlying facts are substantially the same.

In determining whether or not a given tax can be legitimately rebated upon export, the ITA utilizes the "physical incorporation" test. *See* 19 C.F.R. 355 Annex 1.1 (April 1, 1986). The defendant contends that the ITA determined, consistent with its practice in other cases, that packing materials are physically incorporated into the pipe and tube exported to the United States. Plaintiff, while not challenging the test utilized by the agency, contends that the ITA does not consider materials used for processing as physically incorporated into the final product. Since chemicals are used to pickle the pipe before galvanization, and only a negligible portion of paint remains on the pipe, plaintiff contends paints and chemicals are not incorporated into the pipe.

As a general rule, agency regulations should be sustained unless unreasonable and plainly inconsistent with the statute. *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 928 (Fed.Cir.1984). Unless this interpretation is clearly erroneous, this Court will not substitute its judgment for that of the agency. *See SCM Corp. v. United States*, 4 CIT 7, 544 F.Supp. 194 (1982).

It is entirely appropriate for the ITA to develop a reasonable means for effectuating the statutory adjustment provisions in the context of materials used in the manufacture of products exported to the United States. When a reasonable practice is employed consistently, as is evident in this case, this Court will show greater reluctance to examine the merits of the agency's practice. Upon remand, the ITA may make an adjustment to account for those inputs it reasonably finds are physically incorporated into the merchandise exported to the United States.

## CONCLUSION

The ITA's decision to add to USP the amount of taxes not collected on the exported merchandise was appropriate since these taxes were not collected by reason of the exportation. With respect to the second adjustment performed by the ITA, a remand is necessary. The ITA shall have 45 days in which to verify the taxes incurred by Zenith and Gujarat on the exported merchandise. To the extent these taxes have been paid and rebated as shown by the verification proceedings, an upward adjustment to USP is appropriate. This of course presupposes that such taxes have been added to or included in the price of such or similar merchandise when sold in the home market. *See* § 1677a(d)(1)(C).