*Ware from Mexico.* The Court by statute is not bound by the final decision and is not required to consider the final decision.[6]

CONCLUSION

The Court remands Commerce's finding of calculation of CV to determine whether the transfer price of enamel frit constituted an arm's length transaction as prescribed by the statute and previous practice. The Court affirms all of Commerce's other findings in the amended final results of the fourth administrative review.

TECOM CO., LTD., PLAINTIFF *v.* UNITED STATES AND THE U.S. DEPARTMENT OF COMMERCE, DEFENDANTS

Court No. 92–08–00538

(Dated April 4, 1997)

*Ablondi, Foster & Sobin, P.C. (Italo H. Ablondi, Peter J. Koenig, F. David Foster* and *Robert Maguire)* for the plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Cynthia B. Schultz);* and Office of the Deputy Chief Counsel for Import Administration, U.S. Department of Commerce *(Priya Alagiri),* of counsel, for the defendants.

MEMORANDUM AND ORDER

AQUILINO, *Judge:* Counsel for the plaintiff have interposed a motion which the court deems made pursuant to CIT Rule 56.2 for judgment upon the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA") *sub nom. Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 29,283 (July 1, 1992).

I

The order accompanying the motion proposes five specific forms of relief, to wit, instructing the ITA to (a) consider data on a computer tape provided by the plaintiff, (b) make a level-of-trade adjustment for Tecom sales to original equipment manufacturers ("OEMs") in the United States as opposed to dealers or distributors in its home market Taiwan,

---

[6] 19 U.S.C. § 1516a(b)(3) (1994) Effect of decisions by NAFTA or United States Canada binational panels:

In making a decision in any action brought under subsection (a) of this section, a court of the United States is not bound by, but may take into consideration, a final decision of a binational panel or extraordinary challenge committee convened pursuant to article 1904 of the NAFTA or of the Agreement.

(c) insure that such adjustment not reflect certain expenses for any home-market sales to OEMs, (d) make circumstances-of-sale adjustments for specified expenses and (e) base any dumping calculation on home-market sales of merchandise to dealers or distributors, not end-users. The plaintiff claims error by the agency with respect to these matters which makes the aforesaid determination unsupported by substantial evidence on the record or otherwise not in accordance with law within the meaning of 19 U.S.C. §1516a(b)–(1)(B) (1992).

The court's jurisdiction to grant such relief emanates from the Trade Agreements Act of 1979, as amended, and the Customs Courts Act of 1980, 28 U.S.C. §1581(c) and §2643(c)(1). The first statute also enabled the ITA to make adjustments in determining foreign-market value whenever it was established that the amount of any difference between the United States price and the foreign-market value was wholly or partly due to differences in circumstances of sale. 19 U.S.C. §1677b(a)(4)(B) (1992). Regulations promulgated in conjunction with this authority required that claims for adjustment to foreign-market value be established to the satisfaction of the agency[1] and also that the ITA normally would calculate that value and United States price based on sales at the same level of trade. 19 C.F.R. §353.58 (1992). With regard to differences in circumstances of sale, the governing regulation provided:

> (a) *In general*. (1) In calculating foreign market value, the Secretary will make a reasonable allowance for a *bona fide* difference in the circumstances of the sales compared if the Secretary is satisfied that the amount of any price differential is wholly or partly due to such difference. In general, the Secretary will limit allowances to those circumstances which bear a direct relationship to the sales compared.
>
> (2) Differences in circumstances of sale for which the Secretary will make reasonable allowances normally are those involving differences in commissions, credit terms, guarantees, warranties, technical assistance, and servicing. The Secretary also will make reasonable allowances for differences in selling costs (such as advertising) incurred by the producer or reseller but normally only to the extent that such costs are assumed by the producer or reseller on behalf of the purchaser from that producer or reseller.
>
> (b) *Special rule*. (1) Notwithstanding paragraph (a), the Secretary normally will make a reasonable allowance for other selling expenses if the Secretary makes a reasonable allowance for commissions in one of the markets under consideration and no commission is paid in the other market under consideration, but the Secretary will limit the amount of such allowance to the amount of the other selling expenses incurred in the one market or the commissions allowed in the other market, whichever is less.
>
> (2) In comparisons with exporter's sales price, the Secretary will make a reasonable deduction from foreign market value for all ex-

---

[1] *See* 19 C.F.R. §353.54 (1992).

penses, other than those described in paragraph (a)(1) or (a)(2), incurred in selling such or similar merchandise up to the amount of the expenses, other tha[n] those described in paragraph (a)(1) or (a)(2), incurred in selling the merchandise.

(c) *Reasonable allowance*. In deciding what is a reasonable allowance for any difference in circumstances of sale, the Secretary normally will consider the cost of such difference to the producer or reseller but, if appropriate, may also consider the effect of such difference on the market value of the merchandise.

19 C.F.R. §353.56 (1992).

## A

According to the record presented herein, upon commencement by the agency of an administrative review of its anti-dumping-duty order[2], questionnaires issued to the plaintiff and other parties. As part of its response thereto, Tecom submitted a computer tape of apposite data. More than a year thereafter, the ITA reported in the final determination now contested that that tape was "unsolicited" and also "unreadable" and therefore not considered. *See* 57 Fed.Reg. at 29,286 *(Comment 9)*. The plaintiff states that this was the first official report of difficulty deciphering its data, albeit too late for it to attempt to make them all discernible to the agency:

> * * * That delay * * * precluded Tecom from addressing with Commerce * * * the cause of any alleged difficulties with the * * * computer tape. For instance, Tecom's independent computer consulting firm, long-experienced in preparing computer tapes for Commerce dumping investigations, and which prepared the * * * tape * * *, could have consulted with the Commerce's computer staff on this matter in the proceedings below, the typical approach when Commerce believes it has a problem with a computer tape.

Plaintiff's Reply Memorandum, pp. 33–34.

The defendants concede "Commerce's long-standing practice is to notify respondents of deficiencies with regard to information * * * submitted", citing a string of its precedents[3], but reassert the agency's claim that Tecom's tape was unsolicited and aver that ITA "practice is not to even attempt to analyze unsolicited data, let alone notify respondents of deficiencies in [it]". Defendants' Memorandum, p. 39. They cite precedent to this effect[4] and also the rule that parties like Tecom, not the agency, have the obligation of providing intelligible, useful information[5]:

> * * * [I]f the burden of compiling, checking, rechecking, and finding mistakes in [a] submission * * * were placed upon Commerce, it would transform the administrative process into a futility.

---

[2] *See* 54 Fed.Reg. 50,790 (Dec. 11, 1989).

[3] Defendants' Memorandum, p. 38.

[4] *See id.* at 39, n. 17.

[5] *See, e.g., NSK Ltd. v. United States*, 17 CIT 590, 593, 825 F.Supp. 315, 319 (1993).

*Sugiyama Chain Co. v. United States,* 16 CIT 526, 531, 797 F.Supp. 989, 994 (1992).

The plaintiff cannot and does not deny its responsibilities, or claim that the printout of its computer data, as originally submitted, was entirely free of errors. But the record also reflects that Tecom stood ready to correct them in a timely manner and that most, if not all, could have and would have been rectified. Moreover, substantial evidence might have been discovered from the tape even as first filed.

Given the record herein, the court also concludes that the belated defense of lack of solicitation[6] is untenable. To begin with, the agency's general instructions for responding to its Antidumping Request for Information advised:

> Be as detailed as possible in your response * * *. * * * [Y]ou may supplement your replies with whatever additional data you believe will clarify your situation * * *.

Apparently, parties in addition to Tecom availed themselves of this invitation. And the ITA did not reject such submissions as unsolicited. *See, e.g.,* 57 Fed.Reg. at 29,287 (Sinoca *Comment 4*). Indeed, whether or not specifically solicited, to this court's understanding, the agency in a case like this prefers, if not requires, receipt of necessary data processed by computer[7], even when received later than optimal, so long as it can be digested, which was not impossible herein.

## B

Tecom also responded in writing to the ITA's questionnaire, in part as follows:

### 2. *Distribution System*

#### a. *U.S. Market*

In the U.S. market, Tecom only sells to four customers who are * * * OEM[s]. Tecom sells product to these OEMs under *their* brand name, not *Tecom's* brand name. These OEMs in turn sell to their distributors or supply houses, who in turn sell to dealers, and who in turn sell to end-users. The price * * * increases at each stage in the distribution process (from OEM, to distributor, to dealer, to end-user).

Tecom's U.S. OEM customers themselves promote their brand name, Tecom-made, SBTS in the U.S. market (e.g., through extensive and costly advertising). Further, these OEMs provide significant technical and warranty repair services for their U.S. customers.

#### b. *Taiwan Market*

In the Taiwan market, Tecom sells SBTS under Tecom's brand name to distributor[s] and dealers. These customers are generally

---

[6] *Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 57,613 (Nov. 13, 1991), obviously published at an earlier moment, makes no mention of this attitude.

[7] *See* ITA General Instruction 4, Plaintiff's Reply Memorandum, Attachment 1, fifth page.

356

small, family-run operations. Tecom does not sell to OEM[]s in the Taiwan market.

Tecom heavily promotes (e.g., advertises) its brand name SBTS in the Taiwan market to assist its distributors and dealers in selling Tecom SBTS. Further, Tecom provides substantial technical and warranty service support to assist its customers in selling Tecom SBTS.

Tecom's prices to its distributor customers are below its prices to its dealers.[8]

The company requested an adjustment to reflect these different levels of trade. The agency declined, finding that Tecom had not presented evidence justifying such adjustment:

\* \* \* We do not disagree that certain of Tecom's sales to the United States were made at a different level of trade than the home market sales used for comparison purposes. However, in order for Tecom to demonstrate eligibility for a level of trade adjustment, Tecom must show that, where all other factors are equal, home market sales at different levels of trade incur different costs. This would establish that differences between U.S. and home market sales are due to level of trade differences, not other differences in conditions present in two distinct geographical markets. The expenses that Tecom argues are incurred in selling to dealers/distributors that should be used for the level of trade adjustment are technical service expenses, warranty expenses, bad debt, and warehousing. Furthermore, Tecom claims it would incur lower selling expenses (*e.g.*, reduction in staffing, elimination of regional offices) if it sold to OEMs rather than dealers/distributors. However, in making these claims, Tecom has not adequately demonstrated the expenses it would incur in selling to OEMs. Therefore, any adjustment to price would be arbitrary.

57 Fed.Reg. at 29,285. This final determination further rejected the company's referrals to (1) its home-market OEM sales of cordless telephones on the ground that it "ha[d] not adequately demonstrated that [those] phones are of the same general nature as SBTS", (2) its sales in Singapore and Hong Kong on the ground that a level-of-trade adjustment "must be based on home market experience" and (3) the sales of other companies in that market under agency review on the ground that they did not provide information in support of Tecom's position. *Id.* Among other things, the defendants now add that

Commerce requires that a company establish its claim for level-of-trade adjustment by providing, with *quantifiable* evidence, that the cost differences between sales to the two markets affect price comparability.

Defendants' Memorandum, p. 9 (emphasis in original).

The plaintiff replies that this last point is impermissible post-hoc rationalization. The court concurs. *See, e.g., U.H.F.C. Company v. United*

[8] Record Document ("R.Doc") 40, pp. 4–5 (footnotes omitted, emphasis in original). SBTS is the record abbreviation for the company's merchandise, namely, small business telephone systems and subassemblies thereof.

*States*, 916 F.2d 689, 700 (Fed.Cir. 1990) ("Post-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination"), citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *Atcor, Inc. v. United States*, 11 CIT 148, 153, 658 F.Supp. 295, 299 (1987). The plaintiff attempts to counter the ITA's actual, published reasoning quoted above by claiming it

> requests Tecom to undertake an impossibility—i.e., state what Tecom's prices are at the level-of-trade to which Tecom does not sell in each market.

Plaintiff's Reply Memorandum, p. 3. Further, prior to publication,

> Commerce never asked Tecom to show that differences in costs associated with selling to OEMs versus dealers caused price differences.

*Id.* at 5, citing Defendants' Memorandum, p. 4 and quoting R.Doc 54, pp. 3–4. As for Tecom's attempted analogies which were rejected by the agency, the plaintiff offers the following responses, among others:

• Since it only sold cordless telephones to OEMs in Taiwan, not dealers, Tecom could not produce respective pricing data. But it did provide evidence with regard to those sales. *Cf.* Plaintiff's Memorandum, pp. 17–18. And the ITA's final determination fails to state why this evidence is inadequate.

• The agency adopted a *per se* rule that third-country market experience is irrelevant which is contrary to law and contrary to the substantial-evidence rule. *Id.* at 18–19.

• As for the home market Taiwan, Tecom did in fact present evidence with respect to a competitor's costs and also to another company's study of costs it would have incurred in selling SBTS to OEMs. *Id.* at 16.

Both sides refer to *American Permac, Inc. v. United States*, 12 CIT 1134, 703 F.Supp. 97 (1988). In that case, the court reaffirmed that the ITA had a "primary duty" to make level-of-trade adjustments, based upon "*reasonable* burdens of proof on the parties to the investigation as may be necessary to reach a final determination." 12 CIT at 1138, 703 F.Supp. at 101, quoting *Fundicao Tupy S.A. v. United States*, 12 CIT 6, 8, 678 F.Supp. 898, 900, *aff'd*, 859 F.2d 915 (Fed.Cir. 1988)(emphasis in original). In remanding to the agency, the court held the

> ITA's requirement that plaintiffs provide the actual price information with regard to home market sales to distributors, which the ITA knew did not exist, is clearly unreasonable, where the very absence of those sales is the legal prerequisite for the level of trade adjustment. The estimation of this adjustment is implicitly required by law, which prescribes this adjustment precisely because no actual sales at a distributors' level of trade existed in Germany. The burden of proof imposed by the ITA in this case, and the ITA's refusal to use any data other than actual, but nonexisting, wholesale [ ]

prices traps plaintiffs in a vicious circle and is beyond any standard of reasonableness.

*Id.* It further found the agency possessed of the expertise necessary to estimate the hypothetical price in the home market and thus not required to rely on data supplied by the respondents. But the ITA "may not reject * * * submissions as purely speculative merely because they contain certain inevitable estimations." 12 CIT at 1139, 703 F.Supp. at 102. There, as here, the foreign plaintiff had furnished trade data for a neighboring, third country, as well as for another company in the home market under review.

The agency's final determination at bar does little more than mention this decision. *See* 57 Fed.Reg. at 29,285. In their brief, the defendants claim that *"American Permac* buttresses Commerce's denial of Tecom's level-of-trade claim"[9] in that "extensive and verifiable home market data"[10] had been submitted therein. Whatever the facts in that case, here the court concludes that its stated principles point to remand to the ITA for reconsideration of plaintiff's plea for a level-of-trade adjustment.

## C

The plaintiff further requests that such adjustment reflect that Tecom would not incur expenses for regional sales offices, dealer training, end-user testing for dealers, warranty repair, bad debt, and warehousing finished product if it sold SBTS to OEMs in the home market instead of to dealers or distributors. This request relates to apparent lack of such expenses when Taiwan International Standard Electronics, Ltd., another company subject to the administrative review, sold SBTS to OEMs in that market. The agency's final determination simply states that that firm "did not provide any data to support Tecom's conclusion that a LOT adjustment is warranted." 57 Fed.Reg. 29,285 *(Comment 2)*. But, as indicated above, Tecom did, indicating that in Taiwan OEMs themselves assume such expenses.

## D

In general, the ITA recognizes that adjustment for those kinds of expenses "may be appropriate" if they "bear a direct relationship to the sales under consideration" or are "attributable to a later sale of the merchandise by a purchaser". R.Doc 7, p. B–5. And this approach has been sustained on appeal. *See, e.g., Zenith Electronics Corp. v. United States*, 77 F.3d 426 (Fed.Cir. 1996).

To the extent the agency did not make adjustment(s) in this case, the reason stated was essentially lack of supporting evidence, *e.g.*:

> * * * Contrary to Tecom's assertion that its home market warranty expenses should be treated as direct selling expenses, there is no evidence on the record to suggest that its warranty expenses are va-

---

[9] Defendants' Memorandum, p. 16.
[10] *Id.* at 17.

riable. Rather, Tecom would still incur costs for salaries associated with its home market warranty personnel even if Tecom had no sales within a certain period of time. Accordingly, we consider Tecom's home market warranty expenses to be fixed and thus to be indirect selling expenses.

57 Fed.Reg. at 29,286 *(Comment 4). See id.(Comments 5, 6, 7, 8).* In deciding to remand to the ITA for reconsideration of this and other claimed adjustments, the court of course reaffirms that any must be based upon adequate data on the record in support thereof. *See, e.g., Zenith Electronics Corp. v. United States,* 18 CIT 882 (1994). For example, the plaintiff seeks adjustment for free gifts in conjunction with its home-market sales. The ITA reported that it could not make any adjustment for them, in part because it could not decipher Tecom's computer tape. To the extent that or other data are or become comprehensible during remand, and reveal that adjustment is warranted, it must be effectuated.

## E

The final relief for which the plaintiff moves is a direction that the agency base any dumping calculation on home-market SBTS sales to dealers, not end-users. The basis of this concern is expressed as follows:

> * * * Tecom had an infinitesimal number of sales to end-users in Taiwan * * *. * * * Commerce should not compare end-user sales in Taiwan to OEM sales in the United States. Instead, Commerce should compare dealer sales in Taiwan to OEM sales in the United States (and then make appropriate level-of-trade adjustments for differences between dealer and OEM sales). Dealers are at a closer level of trade to OEMs than end-users.

Plaintiff's Memorandum, pp. 42–43 (citation and footnote omitted). The defendants contend that this concern is unfounded[11], and the court is unable to find otherwise on the record presented.

## II

In view of the foregoing, plaintiff's motion for judgment on the ITA record must be granted to the extent of remand to that agency for further proceedings not inconsistent with this opinion. The defendants may have 90 days for such proceedings and to report the results thereof to the court, whereupon the plaintiff may file written comment(s) within 30 days.

---

[11] *See* Defendants' Memorandum, p. 44.