**FUNDICAO TUPY S.A., and Tupy American Foundry Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**and**

**Cast Iron Pipe Fittings Committee, Defendant–Intervenor.**

**Court No. 86–06–00765.**

United States Court of International Trade.

Jan. 12, 1988.

Freeman, Wasserman & Schneider, Patrick C. Reed and Jerry Wiskin, New York City, for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, J. Kevin Horgan, Edwin J. Madaj, U.S. International Trade Commission, Washington, D.C., for defendant.

Rose, Schmidt, Hasley & DiSalle, Peter Buck Feller and Lawrence J. Bogard, Washington, D.C., for defendant-intervenor.

Before WATSON, DiCARLO and TSOUCALAS, JJ.

WATSON, Judge.

Plaintiffs commenced this action challenging the final determinations of the International Trade Administration (ITA) and International Trade Commission (ITC) which resulted in an antidumping order on malleable cast iron pipe fittings from Brazil. Plaintiffs challenge the ITA's decision to disallow "an adjustment to the home market price for a level of trade difference between the United States and the home market sales claimed by plaintiffs because they failed to demonstrate that they had incurred different costs in selling at different levels of trade in the home market." *Malleable Cast Iron Pipe Fittings, Other Than Grooved, from Brazil,* 51 Fed.Reg. 10,898 (Mar. 31, 1986) (final dumping determination). Plaintiffs also contest the ITC's decision to cumulatively assess the volume and impact of Brazilian, Korean, and Taiwanese imports of the subject merchandise in finding that material injury was resulting to an industry in the United States.

The final determination by ITA of sales at less than fair value was issued on March 31, 1986. 51 Fed.Reg. 10,897. The final determination of material injury by the ITC appears in Certain Cast–Iron Pipe Fittings from Brazil, the Republic of Korea and Taiwan, Invs. Nos. 731–TA–278 through 280 (Final), USITC Pub. 1845 (May 1986); 51 Fed.Reg. 18,670 (May 21, 1986).

In *Fundicao Tupy S.A. v. United States,* 11 CIT ——, 652 F.Supp. 1538 (1987), Chief Judge Re assigned this action to a three-judge panel pursuant to 28 U.S.C. § 255(a) (1982) and Rule 77(d)(2) of the Rules of this Court.

Plaintiffs' first claim is that ITA erred in the determination that the cast iron pipe fittings were being sold here at less than fair value, by failing to make an adjustment downward of the foreign market value to account for asserted higher costs arising from the fact that these products are sold to *retailers* in the foreign market as opposed to *distributors* in the United States market. According to plaintiffs, this adjustment should have been made pursuant to 19 C.F.R. § 353.19, a regulation which sets out the authority of the ITA to make appropriate adjustments for difference in the level of trade from which the prices being compared are derived. The government takes the position that it cannot assume that the costs associated with selling to distributors in the United States would have been the same had this product been sold through distributors in Brazil; that it is reasonable to place a burden on the party seeking the benefit of those assertedly lower selling costs, of proving by credible evidence what such costs would have been, and that the burden was not satisfied in this proceeding.

Plaintiffs claim that their proof of the higher costs of retail sales in Brazil as

opposed to the lower costs of sales to distributors in the United States satisfied that burden; that the burden proposed by the ITA would be impossible to satisfy and further, would conflict with the terms of the law governing the adjustments that should be made to foreign market value when sales in the foreign market and the United States market are in different commercial levels of trade. Plaintiffs assert that under Section 773(a)(4)(B) of the Tariff Act of 1930, *as amended,* 19 U.S.C. § 1677b(a)(4)(B), as well as the relevant regulation, 19 C.F.R. § 353.19 the ITA is *required* to adjust foreign market value whenever United States sales and home market sales occur in different commercial levels of trade, regardless of whether the party claiming the adjustment has demonstrated a basis for quantifying the adjustment.

The Court finds that the plaintiffs have overstated the difficulties of the burden placed on them and have proposed an excessively confined role for ITA in its decision on whether to adjust foreign market value.

■ The ITA's rejection of the United States costs of distributors sales as evidence of what the costs of distributors sales in Brazil would have been cannot be characterized as unreasonable or an abuse of discretion in the absence of proof that such costs are internationally uniform. It was open to plaintiffs to demonstrate the costs of such a distribution operation in Brazil by means of expert testimony and proof directly relating to the establishment of such a distribution network. Contrary to plaintiffs' assertion, this would not have violated the statutory ban on the use of pretended sales or fictitious markets in arriving at foreign market value, a prohibition expressed in 19 U.S.C. § 1677b(a)(1) and 19 C.F.R. § 353.18. Those provisions are plainly intended to bar the use of falsified information and do not present an obstacle to the offering of evidence as to what costs might be in certain hypothetical situations.

It may be a fact of economic life that the costs of selling to a distributor in Brazil must be lower than the costs of selling to retailers for the simple reason that the distributor must be able to turn around and sell the articles to the retailers. However, it is a legal and administrative fact of life that the measurement of this lower cost is a duty of ITA which has the authority to impose such reasonable burdens of proof on the parties to the investigation as may be necessary to reach a final determination. The ITA was not bound to accept proof of the costs of sales to distributors in the United States as applicable to Brazil. This was not the holding of the court in *Silver Reed America, Inc. v. United States,* 7 CIT 23, 581 F.Supp. 1290 (1984), *rev'd on other grounds sub. nom. Consumer Products Div., SCM Corp. v. Silver Reed America, Inc.,* 3 Fed.Cir. (T) 83, 753 F.2d 1033 (1985), *CIT remand order vacated, Silver Reed America, Inc. v. United States,* 9 CIT 221 (1985). In that action the court held that the ITA could not deny a level of trade cost adjustment solely because both the United States and home market purchasers of portable electric typewriters were made in large wholesale quantities. The court did not hold that the cost data provided by the plaintiff with respect to the cost expenses of wholesale transactions in the United States (as opposed to home market retail sales of typewriters) was sufficient for making of a determination as to the level of trade cost adjustment. Instead, the court remanded the case to the ITA in order for it to determine whether the plaintiff had adequately quantified its claimed adjustment. The remand order was never implemented because it was vacated by the court.

To summarize, the ITA acted within the limits of its discretion in refusing to accept the costs of sales to American distributors as sufficient proof of what the costs of sales to Brazilian distributors would have been. Plaintiffs refrained from offering proof of what such costs would have been in Brazil and therefore cannot complain that the result was arbitrary or capricious. *See generally Hercules, Inc. v. United States,* 11 CIT ——, 673 F.Supp. 454 (1987).

The second issue in the case is whether or not, in reaching its determination of material injury, the ITC correctly joined imports from Brazil with those from Korea and Taiwan under the cumulation provision of the law. In essence, the new language added in 1984 provides that when the ITC is considering the factors of the volume of imports on prices in the United States, in the course of making its determination as to whether or not material injury is being caused, it shall "cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry in the United States." 19 U.S.C. § 1677(7)(C)(iv) (Supp. III 1985).

Plaintiffs argue that the ITC unlawfully assessed the volume and impact of Brazilian imports cumulatively with those from Korea and Taiwan because imports from each country under investigation must be found to have a separate causal link to the material injury suffered by the pertinent U.S. industry before they can be assessed cumulatively. This argument is based on the assumption that the cumulation provision in the statutory definition of material injury is limited by the basic causation provision of the Tariff Act of 1930 which directs the ITC to determine whether an industry in the United States is materially injured by reason of imports of the merchandise with respect to which the administering authority had made an affirmative determination of dumping. This reasoning has more than once been discredited by this Court as "circular reasoning", most recently in *USX Corp. v. United States*, 11 CIT ——, 655 F.Supp. 487 (1987).

The "contributing effect" test espoused by plaintiffs in this action was appropriate under discretionary cumulation. However, the contributing effect test was held to be improperly applied "when it creates a process of circular reasoning that renders cumulation a vestigial part of the causation analysis." *USX Corp., supra.*

If the above were not sufficiently decisive, the government's position gains added weight from the legislative history, which specifically indicates that a requirement in the bill as introduced that imports from each country have a "contributing effect" in causing material injury was eliminated. H.R.Rep. No. 725, 98th Cong., 2d Sess. 37, *reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS 4910, 5164. It is also noteworthy that the dissenting views of certain members of the House Ways and Means Committee speak of the amendment as one "that would require cumulation of imports ... regardless of the contributory effect ..." and object to the amendment on the ground that it would create "a false injury by lumping imports together regardless of whether there is any indication imports from a particular country are contributing to the injury...." H.R.Rep. No. 725, 98th Cong. 2d Sess. 94, *reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS 5188.

In sum, in the opinion of the Court, the language of the cumulation provision authorizes the action the ITC in this investigation, presents no conflict with other provisions of the law, and is in harmony with the intention of Congress. See, *USX Corp. v. United States*, 11 CIT ——, 655 F.Supp. 487 (1987).

Plaintiffs also claim that the GATT Antidumping Code requires a separate finding of causation with respect to each country under investigation and that the practice of cumulation by the ITC violates that provision. Article VI of the GATT provides that dumping duties must not be imposed on dumped imports from "another contracting party unless it determines that the effect of the dumping or subsidization ... is such as to cause or threaten material injury to an established domestic industry...." General Agreement on Tariffs and Trade (GATT), art. VI, par. 5, *opened for signature* Oct. 30, 1947, 61 Stat. A11, A24, T.I. A.S. No. 1700. Article I of the GATT Antidumping Code provides that "[t]he imposition of antidumping duty is a measure to be taken only under the circumstances provided for in article VI of the General Agreement." Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (Antidumping

**902**

Code), June 30, 1967, 19 U.S.T. 4348, 4349, T.I.A.S. No. 6431.

 The Court is not persuaded that there is a conflict between the actions of the ITC and the GATT Antidumping Code. In the opinion of the Court, such a conflict would arise only if there was no rational basis for inferring that imports from a particular country were participating in causing injury to a domestic industry. While the operation of the cumulation provision does not involve a specific causation finding with respect to each country, it does sufficiently implicate the product of each country in the general pattern of activity which is causing injury. This may test the limits of conformity to the Code but it does not constitute a clear violation of the Code. It must also be stated that even if we were to reach the conclusion that the operation of the cumulation provision violated the GATT Code, we would be bound to give primacy to the law of the United States in accordance with the direction in 19 U.S.C. § 2504(a) (1982).

 Plaintiffs also state an objection to the ITC's action on constitutional grounds apparently because the statute allegedly does not provide consistent standards for enforcement of the law and therefore is a violation of due process of law. The Court is not persuaded that the operation of the cumulation provision raises a due process issue. The conditions upon which cumulation depend are clearly set out in the law and once the merchandise from any country is lawfully joined into the corpus of merchandise being subjected to a determination of injury, the constitutional right of due process of law is satisfied.

 Plaintiffs final argument is that substantial evidence from the record does not support the ITC's decision that imports from Brazil were competing with imports from Korea and Taiwan as well as the domestic-like product. The Court's examination of the record shows that there was sufficient evidence to support this conclusion in the form of marketing data from large purchasers of the product, testimony at the hearing, advertisements, and other material which tended to show that there

was competition between the imports from Brazil, Korea and Taiwan in the residential construction and commercial/industrial end-user markets. In sum, it was reasonable to find that there was sufficient evidence of overlap in the end-use market which, given the fungibility and similar quality of the imports, the similar channels of distribution, the similar time period involved, and the geographic overlap of the markets, justified a conclusion that the imports from Brazil competed with imports from Korea and Taiwan and the domestic-like product within the meaning of the cumulation provision.

For the reasons given above, the final determinations of the ITA and the ITC are affirmed, plaintiffs' motion for judgment on the agency record is denied in all respects, and the complaint is dismissed.