IT IS HEREBY ORDERED, ADJUDGED, and DECREED: that plaintiff's claim for classification of the imported popcorn popper under Item 688.42 of the TSUS is hereby granted and the merchandise which is the subject of this action shall be classified accordingly.

**AMERICAN PERMAC, INC.,** Boewe System & Machinery, Inc., and Boewe Maschinenfabrik, GmbH, Plaintiffs,

**v.**

The **UNITED STATES,** Defendant.

**Court No. 85–01–00050.**

United States Court of International Trade.

Dec. 1, 1988.

Barnes, Richardson & Colburn, Rufus E. Jarman, Jr. and Sandra Liss Friedman, New York City, for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Velta A. Melnbrencis, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This action is brought by Boewe Maschinenfabrik, GmbH ("Boewe"), a West German manufacturer of dry cleaning machinery, and American Permac, Inc. ("API"), Boewe's American distributor. The plaintiffs contest the final results of a periodic review with regard to dry cleaning machinery imported by plaintiffs between July 1, 1979 and June 30, 1980. 50 Fed.Reg. 1256 (January 10, 1985). The International Trade Administration of the Department of Commerce ("ITA") conducted this annual review pursuant to Section 751(a) of the Tariff Act of 1930, 19 U.S.C. § 1675(a), as a result of the outstanding antidumping finding which was published by the Department of Treasury under the Antidumping Act of 1921. 37 Fed.Reg. 23715 (November 8, 1972).[1]

Plaintiffs specifically allege that the ITA failed to allow a "level of trade" adjustment to foreign market prices in violation of 19 U.S.C. § 1677b(a)(4)(B) and 19 C.F.R. 353.19. As an alternative, plaintiffs claim that the ITA erred in refusing to allow adjustments to foreign market prices for other differences in circumstances of sales between the U.S. and German markets, including adjustments for bad debt expenses, credit insurance premiums, servicing ex-

---

1. The Trade Agreements Act of 1979 replaced the Antidumping Act of 1921 with a new law as part of Title VII of the Tariff Act of 1930. *See* Pub.L. 96–39, 93 Stat. 150 (1979). The function of administering the antidumping law was simultaneously transferred from the Depart- ment of Treasury to the Department of Commerce. Commerce was thereby required to continue enforcement of all dumping findings of the Treasury Department which remained in effect on January 1, 1980. *See* 45 Fed.Reg. 20511 (March 28, 1980).

penses, warehousing expenses, traffic expenses, sales management expenses, and sales office expenses. Further, plaintiffs claim that the ITA erred in refusing to adjust the foreign market price for losses incurred in reselling the used trade-in-machinery. Finally, plaintiffs allege that the ITA erred in failing to reduce the foreign market price by the amounts of early payment discounts and that the ITA improperly used confirmation dates, rather than dates of invoices and/or delivery, to select the sales subject to review.

## DISCUSSION

Plaintiffs allege that the ITA's failure to make adequate adjustments for differences in the levels of trade between the U.S. and foreign market is largely responsible for the ITA's determination of sales at less-than-fair value at the rate of 30.05 percent.

The parties do not dispute that all sales of dry cleaning machinery in Germany were made by Boewe directly to end-users, and that Boewe's U.S. subsidiary, API, made the majority of sales in the United States on a wholesale basis to distributors.

Plaintiffs argue, therefore, that they were entitled to a specific adjustment lowering foreign market prices in order to account for this difference and make a fair "apple-to-apple" comparison pursuant to 19 U.S.C. § 1677b(a)(4)(B) and the implementing regulations 19 C.F.R. 353.19.[2]

Plaintiffs advocated several alternative methods to measure or quantify the appropriate amount of the level of trade adjustments during the proceedings below. In addition to arguing that a 30 percent discount from the list price, which was given to all distributors in the United States, represented the appropriate adjustment, plaintiffs suggested several other methods of measuring the adjustment and provided substantiating information necessary to implement those methods.

Plaintiffs submitted a detailed accounting study of the actual expenses which Boewe would not have to incur in Germany if it sold the merchandise to distributors, rather than to end-users. Plaintiffs argue that these expenses represent precisely the amount of an appropriate level of trade adjustment.

Plaintiffs also furnished data relating to its sale in Austria through a distributor and argued that, since Austrian and German markets are very similar, the actual sale prices to distributors in Austria is a reliable and acceptable measurement of a level of trade adjustments to their home market prices. The third method suggested by plaintiffs involved the use of the price structure of another German company, Seco, which was also subject to this administrative review. Seco did have sales of dry cleaning machines in Germany during the relevant period to both end-users and distributors. Finally, plaintiffs suggested that the ITA measure the level of trade adjustment by reference to plaintiffs' home market sales of forms handling machinery, which were made at both levels of trade, but which were not subject to this review.

Plaintiffs assert that the ITA's failure to make a level of trade adjustment, despite plaintiffs' exhaustive submissions of substantiating data, reflects the general reluctance of the ITA to grant this adjustment

**2.** 19 U.S.C. § 1677b(a)(4)(B) provides:

other adjustments.—In determining foreign market value, if it is established to the satisfaction of the administering authority that the amount of any difference between the United States price and the foreign market value (or that the fact that the United States price is the same as the foreign market value) is wholly or partly due to—

(B) other differences in circumstances of sales;

then due allowance shall be made therefor.

19 C.F.R. 353.19 provides:

The comparison of the United States price with the applicable price in the market of the country of exportation (or, as the case may be, the price to or in third country markets) generally will be made at the same commercial level of trade. However if it is found that the sales of the merchandise to the United States or in the applicable foreign market at the same commercial level of trade are insufficient in number to permit adequate comparison, the comparison will be made at the nearest comparable commercial level of trade and appropriate adjustments will be made for differences affecting price comparability.

under any circumstances. In support of this assertion, plaintiffs refer to the ITA's *Study of Antidumping Methodology And Recommendation For Statutory Change,* (1985), page 56,[3] which states:

There is no statutory requirement that we make a level-of-trade adjustment when comparing sales at different levels of trade. The effect of differences in level of trade upon price comparability can often be measured by the quantity discounts given; when quantity discounts are not given, we have found it difficult, if not impossible, to determine the existence of and measure any such effect. Thus, the Department is considering eliminating the level-of-trade provision from its regulations.

Defendant in this action does not argue that this adjustment is not required by law, but maintains that no adjustment is appropriate in this case, because plaintiffs failed to quantify this adjustment. In the notice of the final results of this review, the ITA provided the following explanation:

When there were no contemporaneous home market sales through agents, we compared sales to distributors in the U.S. with direct sales to end-users in the home market, with no adjustment for level of trade differences in the absence of adequate quantification of such differences.

50 Fed.Reg. at 1259.

Defendant alleges that all methods suggested by plaintiffs to measure the levels of trade adjustments are completely speculative. Moreover, defendant submits that there is no data which a respondent can supply to quantify the difference between the United States and foreign level of trade when only one level of trade existed in the home market.

With regard to the detailed cost data provided by plaintiffs to measure their distribution-related expenses, defendant states:

Commerce has consistently rejected comparisons between cost of sales in the U.S.

market and cost of sales in the home market as support for claimed adjustments for differences in levels of trade because they do not demonstrate that the differences in selling costs are due only to different levels of trade. The differences between the costs in the U.S. market and the costs in the home market are too disparate to attribute the differences in selling costs *only* to levels of trade. Thus, a level of trade adjustment can be measured accurately only when sales occur in the home market at two separate levels of trade. Only in that situation ... the number of variables that could affect selling price are reasonably minimized and the cost differences attributable to level of trade adequately isolated.[4]

Consequently, defendant asserts that plaintiffs failed to meet their burden of proof to establish an entitlement to a level of trade adjustment relying on *Fundicao Tupy S.A. v. United States,* 678 F.Supp. 898 (CIT 1988) *affd.,* 859 F.2d 915 (C.A.F.C. 1988).

■ The Court finds that the ITA's determination that plaintiffs failed to establish their entitlement to the level of trade adjustment is not supported by substantial evidence on the record, is not reasonable, and is not in accordance with the law.

In *Smith–Corona Group v. United States,* 713 F.2d 1568, 1575 (1983), the Court of Appeals analyzed the legislative purpose of the antidumping law as follows:

Congress sought to afford the domestic manufacturer strong protection against dumping, seeming to indicate that the Secretary should err in favor of protectionism.... On the other hand, the Secretary is directed to make a fair and equitable valuation, which may reduce the antidumping margin as a result of downward adjustments to foreign market value.

Even though the two competing purposes of the legislation may seem to conflict with each other, they do reflect the

---

3.  This study was prepared by the Department of Commerce and submitted to Congress pursuant to § 624 of the Trade and Tariff Act of 1984, Pub.L. 98–573, 98 Stat. 2948, 3041–3042.

4.  Defendant's brief, pp. 19–20, footnote omitted.

general policy which is designed to protect domestic industries from unfair trade practices of their foreign competitors, while providing freedom for fair trade. In fact, these two purposes of the statute complement, rather than conflict with each other.

In order to make a fair and equitable determination and separation of unfair sales practices from those which are legitimate, the statute mandates the administering authority to ensure that the prices used for determining the foreign market value and the U.S. prices of the merchandise are based on equivalent commercial terms. When such terms are not found to be similar, the implementing regulations require the administering authority to make appropriate adjustments to foreign prices in arriving at fair market value of the merchandise to be used for comparison to the U.S. prices.

The Court can find nothing in the language of either the statute or the regulations that would require plaintiffs to trace precisely and conclusively the exact level of impact the difference in the levels of trade might have on their home market prices. To the contrary, 19 U.S.C. § 1677b(a)(1) contains an economic presumption that certain major differences in commercial terms are bound to distort the price comparison. The implementing regulation, § 19 C.F.R. 353.19, therefore, properly requires that the price comparison be made "at the same commercial level of trade," and that adjustments be made if the comparison is not made at the same levels of trade.

Defendants' reliance on *Tupy, supra,* is misplaced. The court upheld the ITA's denial of this adjustment in *Tupy,* because plaintiffs in that case failed to provide any home market data necessary to quantify the adjustment. At the same time, the court recognized specifically that "it is a legal and administrative fact of life that the measurement of this [adjustment] ... is *a duty* of the ITA." [5] In order to be able to fulfill that primary duty, the ITA is vested with "the authority to impose such

*reasonable* burdens of proof on the parties to the investigation as may be necessary to reach a final determination." [6]

■ The Court does not find the burden of proof imposed on plaintiffs in this case to be reasonable. The ITA's requirement that plaintiffs provide the actual price information with regard to home market sales to distributors, which the ITA knew did not exist, is clearly unreasonable, where the very absence of those sales is the legal prerequisite for the level of trade adjustment. The estimation of this adjustment is implicitly required by law, which prescribes this adjustment precisely because no actual sales at a distributors' level of trade existed in Germany. The burden of proof imposed by the ITA in this case, and the ITA's refusal to use any data other than actual, but nonexisting, wholesales prices traps plaintiffs in a vicious circle and is beyond any standard of reasonableness.

The courts have consistently recognized and upheld the adjustments for various differences in circumstances of sales between the two markets in order to effectuate the fair "apple-to-apple" comparison between the U.S. and foreign market prices. In *Silver Reed America, Inc., et al. v. United States, et al.,* 699 F.Supp. 291 at 295 (CIT 1988), the court specifically rejected the burden of proof imposed by the ITA with regard to the level of trade adjustment as unreasonable.

[D]efendant's rejection of Silver's proof ... imposes a "catch—22" burden of proof on Silver that makes it virtually impossible for Silver to qualify for a level of trade adjustment. Such unreasonable burden of proof must be rejected.

■ The administering agency possesses the expertise necessary to estimate the hypothetical price to distributors in Germany and, as we found in *Tupy,* the ITA may accept "evidence as to what costs might be in certain hypothetical situations." [7] Even though the ITA was not required to use plaintiffs' estimations of the adjustments,

---

**5.** *Tupy, supra,* at 900, emphasis added.

**6.** *Id.,* emphasis added.

**7.** *Id.*

it could utilize plaintiffs' data to arrive at its own estimates. The ITA may not reject plaintiffs' submissions as purely speculative merely because they contain certain inevitable estimations.

In affirming our decision in *Tupy*, the Court of Appeals stated that it would be too speculative "to assume that the cost differential is the same in Brazil as in the United States."[8] Plaintiffs in this case, however, provided the very information with regard to their *home market* which was found lacking in *Tupy*. Consequently, while the court found that it would be too speculative to determine the difference in the levels of trade between the U.S. and foreign market exclusively on the basis of costs and sales practices within the U.S. market, the extensive and verifiable home market data, which was provided by plaintiffs in this case, allows for an acceptable determination of the adjustment for the difference between the levels of trade in the U.S. and German markets.

The ITA argues that the adjustment should not be granted because plaintiffs failed to establish that the difference between the U.S. and foreign prices of the merchandise was "wholly or partly due to" any such difference in the levels of trade between the two markets. This argument, however, is contrary to the ITA's own regulations which treat any difference in circumstances of sales between the two markets as equal to the costs of such difference rather than tracing their actual effect on prices. Section 353.15(d) of the regulations states specifically that "[i]n determining the amount of the reasonable allowances for any differences in circumstances of sale, the Secretary will be guided primarily by the cost of such differences to the seller."

In *Smith–Corona*, the court found the use of costs criteria to be reasonable:

> The implicit assumption of 19 C.F.R. 353.15(d) is that such differences very likely exist where there exist differences in cost.... We hold only that, absent evidence that costs do not reflect value,

the Secretary may reasonably conclude that cost and value are directly related.... The use of cost criteria to satisfy the quantum of evidence required to establish entitlement is reasonable.[9]

■ The additional costs of selling the merchandise to the end-users in Germany were amply provided by plaintiffs in this case. Unless the ITA has specific evidence that these additional costs are not reflected in the prices of the merchandise in West Germany, the ITA may not reject this data as too speculative. Consequently, the Court remands this issue to the agency.

As an alternative to the level of trade adjustment, plaintiffs claim a number of specific adjustments for various differences in the selling expenses between the U.S. and West German markets. These specific adjustments stem from the fact that in the home market plaintiffs incur additional selling expenses when selling their product to the individual end-users.

Plaintiffs allege that all of these adjustments are necessary to offset the ITA's failure to grant the overall adjustment for the difference in the levels of trade between the two markets. Plaintiffs assert that they do not incur these particular expenses in their sales to distributors in the U.S. market, because the U.S. distributors, by definition, assume these selling expenses, and, therefore, they receive appropriate discounts.

Since the Court finds that plaintiffs are entitled to the level of trade adjustment, we do not need to address plaintiffs' alternative claims for these specific differences in circumstances of sales between the two markets. The statute and the regulation allow for adjustments for the difference in directly related selling expenses in addition to the initial requirement that the administering authority select sales which are made on an equivalent commercial basis in the two markets.

Section 19 U.S.C. § 1677b(a)(1)(A) requires that the foreign market prices to be selected for comparison shall reflect "sim-

**8.** *Fundicao Tupy, S.A. v. United States,* 859 F.2d at 917 (C.A.F.C.1988).

**9.** *Smith–Corona, supra,* at 1577.

ilar merchandise ... the usual wholesale quantities and ... the ordinary course of trade." Once the U.S. and foreign market prices are properly selected and are adjusted to the common or comparable commercial denominator, 19 U.S.C. § 1677b(a)(4)(B) further provides that appropriate adjustments shall be made for other directly related differences in circumstances of sales between the two markets.

■ Since the alternative adjustments claimed by plaintiffs in this case are specifically attributable to the difference in the levels of trade between the two markets, rather than other additional differences in selling expenses, they would not be necessary once the level of trade adjustment is made. Moreover, it would be within the ITA's discretion to deny these specific adjustments in order to avoid double counting, once the level of trade adjustment is granted.

Consequently, the Court will not review at this juncture the ITA's requirement that in order to qualify as "directly related," the selling expenses must be attributable to a particular individual sale, rather than a group of sales, and/or be a condition of each specific sale under review.

The two remaining issues raised by plaintiffs concern the use of confirmation dates, rather than the dates of invoice or delivery, in the selection of sales subject to review and the ITA's refusal to deduct the early payment discounts of 2 percent on all sales in their home market.

The Court finds that plaintiffs fail to meet their burden of proof that these practices of the ITA are not reasonable, not supported by administrative record, or are otherwise contrary to the applicable law.

■ Plaintiffs merely assert that the date of each sale which took place in Germany should be determined under the German law, pursuant to generally accepted principles of conflict of laws.

The Court does not agree with plaintiffs' position that the choice-of-law principles control the ITA's selection of sales subject to review. Moreover, this approach would not be desirable, because the ITA must administer the law with a degree of uniformity without having to change its practice depending on the foreign laws in the country of exportation under review.

Apart from admitting that the use of delivery dates would be beneficial to plaintiffs, they fail to demonstrate in what way the ITA's long-standing practice is either illegal or unreasonable. The ITA uses the date of sale when all terms of the sale are established, which is the date of order-confirmations in this case. Plaintiffs allege that some order-confirmations may be cancelled, but fail to specify how many, if any, such cancellations took place during the relevant period, whether they were made without any contractual penalties, or any other substantiating information which would imply the inherent unfairness of using the confirmation dates in their case.

■ Similarly, plaintiffs allege that the ITA should use foreign prices minus the 2 percent discounts for early payment without regard to whether these discounts were actually utilized by Boewe's purchasers in the home market. Plaintiffs complain that the ITA allowed these discounts "only" when they were actually given as a result of prompt payments. In support of their proposition, plaintiffs rely on prior value statutes concerning the appraisement of merchandise for customs purposes under which discounts freely offered were taken into account in arriving at a legal value of the merchandise.

The Court does not find that the customs valuation law has any weight in an antidumping case which is subject to the specific requirement of Section 1677b(a)(1) of the Act that the administering authority utilize prices at which the merchandise is actually "sold" in the home market. If plaintiffs' customers chose not to utilize the discount offer, the full amount represented the price at which the merchandise was actually sold. Consequently, plaintiffs fail to show that the ITA's determination to use prices actually paid by Boewe's customers is unreasonable or contrary to the law.

## CONCLUSION

The Court concludes that the ITA has failed to apply a reasonable standard in

determining that plaintiffs do not qualify for a level-of-trade adjustment. This issue is remanded to the ITA for reconsideration in accordance with the opinion of this Court. Commerce shall make the necessary adjustments consistent with this opinion and file with the Court within forty-five days a supplemental record explaining its redetermination. If any party wishes to challenge the remand results, it shall confer with opposing counsel and submit a briefing schedule within 10 days of the determination or remand.

The ITA determination with regard to the remaining issues raised by plaintiffs in this case is hereby affirmed.

SO ORDERED.