**SUGIYAMA CHAIN CO., LTD., I & OC of Japan Co., Ltd. and HKK Chain Corp. of America, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Slip Op. No. 95–116.
Court No. 92–12–00798.

United States Court of
International Trade.

June 23, 1995.

Arent Fox Kintner Plotkin & Kahn (Patrick F. O'Leary and Peter L. Sultan), for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., David M. Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice (Michael S. Kane); Patrick V. Gallagher, Jr., Attorney–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, for defendant.

OPINION

CARMAN, Judge:

Plaintiffs Sugiyama Chain Co., Ltd., I & OC of Japan Co., Ltd. (I & OC), and HKK Chain Corp. of America (collectively "plaintiffs" or "Sugiyama") challenge the results of the Department of Commerce's (Commerce or Department) second remand determination (*Second Remand Results*) rejecting plaintiffs' claimed level of trade adjustment. This dispute arises from Commerce's April 1, 1990, through March 31, 1991, administrative review of the antidumping finding on roller chain, other than bicycle, from Japan. *See Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 56,319 (Dep't Comm.1992) (final results), as amended by *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed. Reg. 58,285 (Dep't Comm.1992) (final results). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988).

BACKGROUND

A. *Case History*

By an opinion and order of this Court, the final results of Commerce's April 1, 1990, through March 31, 1991, administrative review of the antidumping finding on roller chain, other than bicycle, from Japan, was remanded for a second time on the issue of plaintiffs' claimed level of trade adjustment. *Sugiyama Chain Co., Ltd. v. United States,* 19 CIT ——, 880 F.Supp. 869 (1995) (*Sugiyama III* ); *see also Sugiyama Chain Co., Ltd. v. United States,* 18 CIT ——, 865 F.Supp. 843 (1994) (*Sugiyama II* ) (remanding this administrative review for the first time on three issues, including plaintiffs' claimed level of trade adjustment). Pursuant to this Court's instructions in *Sugiyama II,* Commerce was supposed to have addressed whether a comparison of United States sales by Sugiyama directly to I & OC, an unrelated trading company, with home market sales by Sugiyama through related distributors "Companies E and H"[1] to their respective

---

1. The companies are referred to as "Companies E and H" for confidentiality purposes.

   In *Sugiyama II,* plaintiffs contended Commerce erroneously determined Sugiyama and Company E are related parties. *See Sugiyama II,* 18 CIT at ——, 865 F.Supp. at 845. This

Court held Commerce's determination that Sugiyama and Company E are related parties within the meaning of 19 U.S.C. § 1677(13)(C) was based on substantial evidence on the record. *See id.* at ——, 865 F.Supp. at 849. The relation of Sugiyama and Company H is not contested.

unrelated customers merited a level of trade adjustment. *See Sugiyama III*, 19 CIT at ——, 880 F.Supp. at 874. Plaintiffs argued that home market customers buying through Sugiyama's related distributors Companies E and H

> were at a second level of trade because their purchases were made through the home market intermediary distributors.... [E]ssentially it is plaintiffs' position that an adjustment to [foreign market value] is necessary to account for marketing, sales, distribution and collection expenses incurred by Companies E and H to their customers and ostensibly reflected in their resale prices at the second level of trade, which prices Commerce compared with Sugiyama's U.S. sales directly to I & OC at the first level of trade. The short of the matter is that plaintiffs claim that a level-of-trade adjustment is in order to avoid a dumping margin calculation based on unfair price comparisons.

*Id.* at ——, 880 F.Supp. at 875. Plaintiffs also complained that Commerce had failed to address plaintiffs' proposed alternative methodology for quantifying the claimed level of trade adjustment. *Id.* at ——, 880 F.Supp. at 875.

Upon review of the determination, this Court found Commerce had failed once again to adequately address Sugiyama's claimed level of trade adjustment. *See id.* at ——, 880 F.Supp. at 875. Although counsel for defendant attempted to argue to this Court that Sugiyama did not provide a "basis for determining whether all, part, or none of the related distributors' alleged selling expenses differ from expenses incurred by Sugiyama— or how the individual components of the expenses relate to price differences incurred as a result of making sales at several levels of trade,"[2] defendant's first remand determination "utterly fail[ed] to raise, much less ad-dress, such issues." *Id.* at ——, 880 F.Supp. at 874. This Court also found Commerce had again failed to address plaintiffs' proposed alternative methodology for quantifying the claimed level of trade adjustment. *Id.* at ——, 880 F.Supp. at 875. Accordingly, this Court remanded to Commerce "for a full explanation of its rationale on Sugiyama's claim for a level-of-trade adjustment, thus eliminating the need for speculation by the court and plaintiffs as to the specific issues and information that the agency considered in making its determination." *Id.* at ——, 880 F.Supp. at 875.

### B. *Commerce's Second Remand Results*

In Commerce's *Second Remand Results* presently before this Court, Commerce explains its rejection of Sugiyama's claimed level of trade adjustment as follows. Under Commerce's regulations, any party seeking an adjustment to foreign market value bears the burden of establishing a basis for its claim. *See Second Remand Results* at 3 (citing 19 C.F.R. § 353.54). For level of trade adjustments, Commerce reports its practice is to require a respondent to: (1) request the adjustment; (2) "demonstrate that distinct, discernable levels of trade exist by describing the functions performed at each level"; and (3) quantify the adjustment, "normally by demonstrating that it incurred differing selling expenses on sales to different levels of trade." *See id.* at 3–4 (citing 19 C.F.R. § 353.54 and *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany*, 56 Fed.Reg. 31,692, 31,710 (Dep't Comm.1991) (final results)). In Sugiyama's case, Commerce acknowledges Sugiyama requested a level of trade adjustment in its response to Commerce's original questionnaire. *See id.* at 4. Commerce concludes, however, that Sugiyama has failed on the second and third requirements of showing

---

Accordingly, this Court notes an error in *Sugiyama III* where this Court stated that in *Sugiyama II*, the Court had remanded "the level-of-trade adjustment issue to address whether a comparison of U.S. sales by Sugiyama directly to I & OC, an unrelated trading company, with home market sales by Sugiyama through *unrelated* intermediary distributing [C]ompanies E and H to their respective customers merits a level of trade adjustment." *Sugiyama III*, 19 CIT at ——, 880 F.Supp. at 874 (describing *Sugiyama II*) (emphasis added). The Court should have referred to Companies E and H as *related* companies.

**2.** *Sugiyama III*, 19 CIT at ——, 880 F.Supp. at 874 (citation and internal quotation marks omitted).

justification for and quantification of the claimed level of trade adjustment. *See id.* at 8, 9, 13.

### 1. Distinct, Discernable Levels of Trade

On the issue of showing justification for Sugiyama's claimed level of trade adjustment, Commerce states in the *Second Remand Results* first that Sugiyama supported its claim for a level of trade adjustment by asserting that "sales to I & OC were made at 'wholesale level one,' whereas the home market sales to which those sales were matched, sales from Sugiyama's related distributors, [C]ompanies E and H, to their respective customers, were made at 'wholesale level two.'" *Id.* at 4. Commerce complains, however, that Sugiyama failed to define "distributor" and its "wholesale level" terms. *Id.* Thus, Commerce reasons, "record support for Sugiyama's claim that the customers of [C]ompanies E and H are at a different [level of trade] than I & OC is based *solely* on the fact that I & OC purchases merchandise directly from Sugiyama, whereas the customers of [C]ompanies E and H buy from another company (E or H) which buys directly from Sugiyama." *Id.* at 4–5.

Second, Commerce explains it looks to the function of the purchaser to determine whether sales are made at different levels of trade. *Id.* at 5. According to Commerce, its long-standing practice is to

> rely on the respondent's description of the functions performed by the purchaser in the market or distribution network to determine individual [levels of trade] and the extent to which discernable [levels of trade] exist. In addition, a particular purchaser's [level of trade] is not determined by the number of transactions which occur prior to its purchase of the merchandise.

*Id.* Commerce states that here, however, Sugiyama neither described the functions performed by the purchasers at issue nor defined the terms used to describe those purchasers. *Id.* Furthermore, Commerce explains, questions raised because Sugiyama labeled all of the purchasers at issue "distributors" "should have been answered through a thorough explanation of the functions performed by each of the customers at issue."

*Id.* Commerce states, however, that Sugiyama did not proffer an explanation despite Commerce's request that Sugiyama explain why a level of trade adjustment was warranted. *Id.* at 5–6 (citation omitted).

Third, Commerce states in the *Second Remand Results* that notwithstanding Sugiyama's assertion to Commerce that Sugiyama did describe the various levels of trade involved in its questionnaire responses, the portions of the responses to which Sugiyama refers "contain nothing more than unsupported claims that I & OC is at a different [level of trade] than the customers of E and H, and not descriptions (*e.g.* characterizations, explanations, portraits) of these levels or the functions performed at these levels." *Id.* at 6. Commerce also disputes Sugiyama's argument it cannot be faulted for not providing information because Commerce failed to request an explanation of the functions of the purchasers at issue. *Id.* Commerce explains its

> request for an explanation of why a [level of trade] adjustment is necessary generated no explanation of the nature of the various levels or the buyers at issue. Had Sugiyama submitted any examination of the various levels of trade and an explanation of how they differ, we would have included it in our analysis.

*Id.* Commerce adds that in the appendix to a September 27, 1991, questionnaire, Commerce explicitly stated that the respondent is required to justify each adjustment and its allocation to individual items. *Id.* at 7 (citation omitted).

Finally, to further illustrate its conclusion that Sugiyama failed to justify the claimed level of trade adjustment, Commerce disputes the characterization of *Potassium Permanganate From Spain,* 56 Fed.Reg. 58,361 (Dep't Comm.1991) (final results) (*Potassium Permanganate*), which Sugiyama argued to Commerce. *Id.* Commerce states that although

> Sugiyama correctly observes that the central issue in *Potassium Permanganate* was whether a [level of trade] adjustment was appropriate to account for an additional [level of trade] between the first unrelated buyer and the enduser in the U.S. market,

this observation does not negate the general rule ... that we look to the type and function of a purchaser to determine its trade level.

*Id.* at 8.[3] On the issue of demonstrating distinct, discernable levels of trade, Commerce concludes that "[a]bsent an explanation from Sugiyama regarding the functions performed by the various distributors at issue, the Department must conclude that for home market sales the distribution functions are simply divided between Sugiyama and E and H, whereas for U.S. sales these same functions are consolidated within Sugiyama." *Id.*

2. Quantification of the Claimed Level of Trade Adjustment

On the issue of Sugiyama's quantification of the claimed level of trade adjustment, Commerce concludes Sugiyama has failed to provide the data necessary to make an adjustment to sales made by Companies E and H. *Id.* at 9. To quantify a claimed level of trade adjustment, Commerce explains, "a respondent normally must demonstrate that it incurred differing indirect selling expenses on sales to different levels of trade in the home market, and that these differences in selling expenses are attributable to differences in levels of trade." *Id.* at 8–9 (citation omitted).[4] Commerce explains that Sugiyama's response, however, was deficient because: (1) the only information Sugiyama submitted was a list of its "indirect selling expenses"; (2) Sugiyama did not indicate the customers or the markets to which these expenses are attributable; (3) only the ratios of selling expenses to total sales of Companies E and H were provided, these ratios were not provided with supporting informa-

tion or documentation, and without this supporting information, Commerce cannot "determine whether these figures represent total sales and expenses or total domestic sales and expenses, and whether the total sales figure includes products other than roller chain"; and (4) Sugiyama "should have provided evidence as to how the related parties' selling expenses were derived, the specific cost components that comprise the aggregate expense figures used to calculate the ratios, and a demonstration that indirect selling expenses were incurred as a result of the related parties' [level of trade], as opposed to expenses that Sugiyama itself incurs when it sells to an unrelated distributor." *Id.* at 9–10.

Commerce further explains that in a supplemental questionnaire, it asked Sugiyama to provide documentation in support of Sugiyama's claim and methodology. *Id.* at 10. In response, however, Commerce states "Sugiyama submitted only the total sales and total selling expenses for [C]ompany H," but did not submit "information concerning what merchandise falls within the total sales figure for [C]ompany H, and there is no information concerning whether the total sales and general expenses figures for [C]ompany H represent all sales by that company or only a portion of those sales." *Id.* at 10–11. Commerce explains that "[s]uch elementary information is necessary for the Department to even begin an analysis of Sugiyama's suggested quantification methodology, let alone determine its adequacy." *Id.* at 11. Commerce concludes that "[f]or the purposes of providing a precise quantification of a claimed [level of trade] adjustment, these four numbers (the two ratios, and the total sales and total selling expenses for [C]ompa-

---

**3.** In the *Second Remand Results,* Commerce also notes the following statement from *Potassium Permanganate:*

In the U.S. market, the first sale to an unrelated buyer is to a distributor. In the home market, the first sale to an unrelated buyer is to a distributor. Respondent agrees that the first unrelated buyer in each market is a distributor....

Because we have compared only sales to distributors in both markets, no consideration of a level of trade adjustment is warranted under the facts of this case.

*Second Remand Results* at 8 (quoting *Potassium Permanganate,* 56 Fed.Reg. at 58,364). Commerce states that in the present case, Sugiyama's own submissions refer to both the "intervening parties" and buyers as "distributors." *Id.*

**4.** According to Commerce, Sugiyama could have submitted the following: (1) Sugiyama's total sales and indirect selling expenses on sales to each of the various types of customer; (2) Company E's total sales and indirect selling expenses on sales to its customers; and (3) Company H's total sales and indirect selling expenses on sales to its customers. *Second Remand Results* at 9.

ny H) are insufficient to permit us to fully comprehend or accept the basis of the Sugiyama claim." *Id.* at 10. Furthermore, Commerce states, Sugiyama "would still need to demonstrate that selling expense differences were due, at least in part, to selling at different levels of trade." *Id.* at 10–11.

Commerce also disputes Sugiyama's contention, submitted on Commerce's draft remand, that quantification of Sugiyama's claimed level of trade adjustment is not required because costs associated with an additional level in a distribution system in the home market, by definition, are due to selling at different levels of trade. *Id.* at 11 (citation omitted). Commerce states that this statement "is based on the assumptions that (a) different levels of trade exist and (b) all of the cost differences between the levels of trade are attributable to selling at different levels of trade." *Id.*

Additionally, Commerce rejects Sugiyama's suggested alternative quantification methodology submitted in response to Commerce's supplemental questionnaire. *See id.* at 11–13. According to Commerce, "Sugiyama suggested that the Department subtract the Sugiyama-to-[C]ompany E (or H) prices from the [C]ompany E (or H) prices to its customers and to use the entire difference as the [level of trade] adjustment." *Id.* at 11–12. Commerce explains Sugiyama claimed its alternative methodology would be analogous to adjustments Commerce makes for payment of commissions to a related commissionaire. *Id.* at 12. Commerce states, however, that Sugiyama's claim is faulty because: (1) a commissionaire's functions and responsibilities are presumably different from those of a distributor; and (2) if E and H were related commissionaires, Commerce "would still require a demonstration that the commissions paid were at arm's length and tied directly to sales." *Id.*

Furthermore, Commerce states, contrary to Sugiyama's conclusion, Commerce has not refused to make a level of trade adjustment using Sugiyama's proposed alternative methodology only because E and H are related to Sugiyama. *Id.* Instead, Commerce maintains, Sugiyama's proposed methodology is deficient because: (1) "there is no demon-stration that the differences in prices are due to selling at different levels of trade"; and (2) "the relationship of [C]ompanies E and H to Sugiyama makes suspect the use of prices from Sugiyama to E and H in calculating a [level of trade] adjustment to sales made by E and H." *Id.* at 12–13. Commerce concludes that "[a]bsent a detailed demonstration to the contrary, the Department must assume that at least some of the alleged price differences are due to factors other than selling at different levels of trade, including the relationship itself." *Id.* at 13.

Finally, Commerce adds, Sugiyama's comparison of sales from Sugiyama to I & OC with home market sales to distributors is an inter-market price comparison approach Commerce has consistently rejected. *Id.* "It is impossible," Commerce explains, "to determine if price differences result from selling at different levels of trade or from other factors affecting prices, such as market restrictions or competition, or if the prices differences are simply a manifestation of dumping." *Id.* Commerce concludes in the *Second Remand Results* that upon reexamination of the level of trade issue, no level of trade adjustment is called for. *Id.*

## CONTENTIONS OF THE PARTIES

Plaintiffs disagree with Commerce's *Second Remand Results.* First, plaintiffs dispute Commerce's finding that Sugiyama did not describe distinct, discernable levels of trade. Sugiyama contends it did "describe the fact that I & OC sales in the United States and E and H sales in the home market occur at different levels in the distribution system." (Pls.' Resp. to Second Remand Determination (Pls.' Resp.) at 1.) Specifically, Sugiyama argues that in its November 29, 1991, questionnaire response, it explained that I & OC is at "wholesale level 1" because it buys directly from the factory, whereas E's and H's customers are at "wholesale level 2" because they buy from the distributors who buy from the factory. (*Id.* (citation omitted).) Sugiyama further argues it "described these different points in the distribution channel in greater detail" in its December 31, 1991, response to Commerce's supplemental questionnaire. (*Id.* at 2.) Sugiyama dis-

putes Commerce's finding that this information was insufficient. "[I]t is hard to see," Sugiyama argues, "what further information Sugiyama should have provided: it showed that its home market sales through E and H are made at a further stage in the distribution system than its U.S. sales to I & OC, involving an additional level of selling expenses in the home market." (*Id.* at 3.)

Sugiyama rejects Commerce's assertion that Sugiyama should have explained the functions of the purchasers at issue because "neither the [sic] Commerce's questionnaire nor its supplemental questionnaire asked for an explanation of the 'functions' of these purchasers." (*Id.* (footnote omitted).) Sugiyama also disputes Commerce's assertion it has a long-standing practice of requiring a description of the purchasers' functions. According to Sugiyama, the determination Commerce cites as support for its practice of examining functions "was published *after* Commerce issued its questionnaire in this review and less than one month before Commerce issued its deficiency letter." (*Id.* at 3–4 (footnotes omitted).)[5] In sum, Sugiyama argues it "can hardly be faulted for not providing information which the Department did not request." (*Id.* at 4.)

Second, plaintiffs dispute Commerce's rejection of Sugiyama's proposed alternative quantification methods. Sugiyama argues it provided: (1) "the ratio of E and H's selling expenses to their total sales"; and (2) "[f]or H, ... data on the company's selling expenses and total sales, from which the ratio was derived." (*Id.* at 5 (citations omitted).) Sugiyama quarrels with Commerce's statements in the *Second Remand Results* questioning the data reported for Company H. Sugiyama argues Commerce "has no basis for not taking H's data at face value ... namely as the ratio of the [company's] selling expenses to the [company's] total sales." (*Id.* (citation and internal quotation marks omitted).)

Sugiyama disputes Commerce's statement in the *Second Remand Results* that " 'Sugiyama would still need to demonstrate that

selling expense differences were due, at least in part, to selling at different levels of trade.' " (*Id.* (quoting *Second Remand Results* at 10–11).) Sugiyama argues that "[b]y definition, the costs associated with an additional level in the distribution system in the home market are due to selling at a different level of trade." (*Id.*) Sugiyama adds that it "also suggested that the adjustment could be quantified by taking the difference between Sugiyama's prices to E and H, and E and H's prices to their customers." (*Id.* (citation omitted).)

Commerce contentions are manifested through Commerce's *Second Remand Results* discussed above.

## STANDARD OF REVIEW

The appropriate standard of review of an action challenging final results by Commerce is whether Commerce's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (citations omitted), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987).

## DISCUSSION

■ The applicable regulations provide as follows:

### § 353.58   Level of trade.

The Secretary normally will calculate foreign market value and United States price based on sales at the same commercial level of trade. If sales at the same commercial level of trade are insufficient in number to permit an adequate comparison, the Secretary will calculate foreign market value based on sales of such or similar merchandise at the most comparable commercial level of trade as sales of the merchandise and make appropriate adjust-

---

**5.** The Court notes that Sugiyama states in its comments on the *Second Remand Results* that Commerce's questionnaire and supplemental questionnaire are not dated. (*See* Pls.' Resp. at 3 n. 3, 4 n. 4.)

ments for differences affecting price comparability.

19 C.F.R. § 353.58 (1990). Commerce's regulations further provide:

### § 353.54 Claims for adjustment to foreign market value.

Any interested party that claims an adjustment under §§ 353.55 through 353.58 must establish the claim to the satisfaction of the Secretary.

19 C.F.R. § 353.54 (1990). It is apparent that the burden of supporting a claim for a level of trade adjustment lies with the party claiming that adjustment. *See Fujitsu Gen. Ltd. v. United States,* Slip Op. 95–44 at 28, (Mar. 14, 1995) (stating the foreign respondent "has the burden of supporting its claim for a level of trade adjustment and not Commerce") (citation omitted), *appeal docketed,* No. 95–1343 (Fed.Cir. May 11, 1995); *Florex v. United States,* 13 CIT 28, 35, 705 F.Supp. 582, 590 (1989) ("Plaintiffs have the burden of supporting their claim for a level of trade adjustment.") (citations omitted); *Fundicao Tupy S.A. v. United States,* 12 CIT 6, 8, 678 F.Supp. 898, 900 (three-judge panel) ("[I]t is a legal and administrative fact of life that the measurement of this [adjustment] is a duty of the [Commerce] which has the authority to impose such reasonable burdens of proof on the parties to the investigation as may be necessary to reach a final determination."), *aff'd,* 7 Fed.Cir. (T) 9, 859 F.2d 915 (1988); *American Permac, Inc. v. United States,* 12 CIT 1134, 1138, 703 F.Supp. 97, 101 (1988) (finding the burden of proof imposed upon plaintiffs "in this case" was not reasonable).

Here, plaintiffs have simply failed to establish to the satisfaction of Commerce that a level of trade adjustment is warranted. Sugiyama claims sales by Sugiyama to I & OC are at a different level of trade than sales by Companies E and H to unrelated customers. Sugiyama explains its primary suggested quantification method as involving utilization of Companies E's and H's selling expenses. (*See* Pls.' Resp. at 5.) Sugiyama adds it "also suggested that the adjustment could be quantified by taking the difference between Sugiyama's prices to E and H, and E and H's prices to their customers." (*Id.*)

■ Commerce's determination that Sugiyama has failed to quantify the claimed adjustment and to prove different levels of trade exist is supported by substantial evidence and is otherwise in accordance with law. First, according to Commerce, Companies E and H are both related to Sugiyama.[6] While it is possible that related party selling expenses may be used to establish a level of trade adjustment, Commerce "closely scrutinizes the claimed selling expenses of a related sales company before granting a level of trade adjustment." *Zenith Elecs. Corp. v. United States,* 11 Fed.Cir. (T) ——, ——, 988 F.2d 1573, 1584 (1993); *see e.g., Silver Reed Am., Inc. v. United States,* 13 CIT 286, 288–89, 711 F.Supp. 627, 629 (1989) (denying a claimed level of trade adjustment based on expenses incurred by a related selling subsidiary and finding, based on the record before the Court, that Commerce had properly determined plaintiff had "complete discretion as to where to place any of its sales functions and where to account for expenses without affecting total corporate profit"). Sugiyama's proffered support for its sales expense quantification was simply inadequate to withstand this scrutiny.

More importantly, however, Sugiyama has failed to show different levels of trade in fact exist. Sugiyama has never established that related Companies E and H should not be regarded as Sugiyama itself so that sales by Companies E and H to their respective customers are at a different level than sales by Sugiyama to I & OC. All Sugiyama appears to have done is state, as if it were an established fact, that the two areas of sales are at different levels.

The Court notes a recent decision by the United States Court of Appeals for the Federal Circuit (CAFC) dealing in part with a claimed level of trade adjustment. *See NEC Home Elecs., Ltd. v. United States,* 54 F.3d 736 (Fed.Cir.1995). The factual background of the case is as follows. NEC Home Electronics, Ltd. (NEC) owned a Japanese subsidiary that manufactured consumer elec-

6. *See supra* note 1.

tronic products, including color televisions. *Id.* at 738. During the review period at issue, all televisions the Japanese manufacturer sold in the Japanese market were sold to affiliated sales companies. *Id.* at 739–40. These affiliated sales companies then sold to unrelated Japanese-market retailers who sold to end-users. *Id.* In its administrative review, Commerce refused to use the related-party sales in its computation of foreign market value. *Id.* at 738. Commerce also concluded that NEC had failed to sufficiently quantify, and therefore was not entitled to, a claimed level of trade adjustment. *Id.*

For reasons not discussed here, the CAFC remanded on the issue of Commerce's refusal to use related-party sales in its computation of foreign market value. *Id.* at 743–44. The CAFC also held that if Commerce refused to use the related-party sales in its calculation of foreign market value on remand, Commerce must also revisit the issue of NEC's claimed level of trade adjustment. *Id.* at 745. The Court observed that, in support of its claim, NEC had provided Commerce with the following: (1) evidence regarding the average "gross margins," or total distributor mark-up, which included the general, selling, and administrative expenses plus profits, of NEC's related wholesalers in its home market; (2) a suggested quantification of the claim the total distributor mark-up as the measure of the level of trade adjustment; (3) data on direct and indirect selling expenses incurred by the related wholesalers; (4) an alternative quantification measure of total selling expenses should Commerce reject

"gross margin" as the proper measure; and (5) evidence submitted through affidavits on the basis of which NEC argued the distribution costs of the affiliated sales companies were consistent with average industry costs at the wholesale level. *Id.* at 745–46. The CAFC determined that, on remand, Commerce should consider whether either of NEC's proffered methods of computing a level of trade adjustment are satisfactory, "and if not, state the reasons for their rejection." *Id.* at 745.

In the present case, Commerce has now adequately explained its rejection of Sugiyama's claimed level of trade adjustment. Furthermore, as described in this opinion, the support Sugiyama has offered to Commerce falls short of what the foreign producer in *NEC* appears to have offered. The Court further notes plaintiffs' evidence in the present case does not approach, for example, that which was offered in *American Permac, Inc. v. United States*, 12 CIT 1134, 703 F.Supp. 97 (1988).[7]

Plaintiffs maintain that the determination Commerce cites as support for its practice of examining functions of the purchasers at issue "was published *after* Commerce issued its questionnaire in this review and less than one month before Commerce issued its deficiency letter." (Pls.' Resp. at 3–4 (footnotes omitted) (referring to *Potassium Permanganate* ).) Plaintiffs argue that Sugiyama cannot be faulted for not providing information Commerce did not request. The Court recognizes that Commerce cannot establish an unreasonably high burden for plaintiffs seek-

7. In *American Permac*, a German respondent sought review of Commerce's refusal to make adjustments for differences in levels of trade between the foreign and United States markets. *American Permac*, 12 CIT at 1135, 703 F.Supp. at 99. The respondent sold directly to end-users in the German market, whereas its United States subsidiary made the majority of its United States sales on a wholesale basis to distributors. *Id.* at 1135, 703 F.Supp. at 99. To support its claim, the German respondent submitted the following: (1) the argument that a 30 percent discount from the list price of the merchandise, given to all United States distributors, represented the appropriate adjustment; (2) "a detailed accounting study of the actual expenses which [respondent] would not have to incur in Germany if it sold the merchandise to distributors, rather than to end-users"; (3) the argument "that these expenses

represent precisely the amount of an appropriate level of trade adjustment"; (4) data relating to respondent's sale in Austria through a distributor, and the argument that "since Austrian and German markets are very similar, the actual sale prices to distributors in Austria is a reliable and acceptable measurement of a level of trade adjustment[ ] to their home market prices"; (5) a suggested methodology involving the use of the price structure of another German company, also subject to the administrative review, which sold products in Germany during the relevant time to both end-users and distributors; and (6) a suggested methodology of measuring the level of trade adjustment "by reference to plaintiffs' home market sales of forms handling machinery, which were made at both levels of trade, but which were not subject to this review." *Id.* at 1135–36, 703 F.Supp. at 99.

ing a level of trade adjustment. *See, e.g., NEC Home Elecs.,* 54 F.3d at 745; *American Permac,* 12 CIT at 1138–39, 703 F.Supp. at 101; *Fundicao Tupy,* 12 CIT at 8, 678 F.Supp. at 900. Based on the record before it, however, this Court finds that even without Commerce's assertion that its practice is to look to the functions of the purchasers at issue, Sugiyama has failed to meet its burden of supporting its claim for a level of trade adjustment. Accordingly, this Court finds Commerce's determination that no level of trade adjustment is merited in this case is supported by substantial evidence and is otherwise in accordance with law.

CONCLUSION

The Court sustains the results of Commerce's second remand determination concerning the administrative review in *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 56,319 (Dep't Comm.1992) (final results), as amended by *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 58,-285 (Dep't Comm.1992) (final results). The Court dismisses this action.

JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that the results of Commerce's second remand determination concerning the administrative review in *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 56,319 (Dep't Comm.1992) (final results), as amended by *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 58,-285 (Dep't Comm.1992) (final results), is sustained; and it is further

**ORDERED** that this action is dismissed.