SUGIYAMA CHAIN CO., LTD., I & OC of Japan Co., Ltd, and HKK Chain Corp. of America, Plaintiffs,

v.

UNITED STATES, Defendant.

Slip Op. 94–122.
Court No. 92–12–00798.

United States Court of International Trade.

July 27, 1994.

Arent Fox Kintner Plotkin & Kahn, Patrick F. O'Leary and Peter L. Sultan, Washington, DC, for plaintiffs.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, Michael S. Kane, Patrick V. Gallagher, Jr., Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

OPINION

CARMAN, Judge:

Plaintiffs move for judgment upon the agency record pursuant to Rule 56.2 of this Court. Plaintiffs contest the Department of Commerce's final results in *Roller Chain, Other Than Bicycle, From Japan*, 57 Fed. Reg. 56,319 (Dep't Comm.1992) (final results) (*Final Results*), as amended by *Roller Chain, Other Than Bicycle, From Japan*, 57 Fed.Reg. 58,285 (Dep't Comm.1992) (final results) (*Amendment*). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (1988).

\* Editor's Note: Redactions done by the court.

BACKGROUND

Commerce's original dumping finding has been in effect since April 12, 1973. *Roller Chain, Other Than Bicycle, From Japan*, 38 Fed.Reg. 9226 (1973). In response to a request from the American Chain Association, Commerce initiated the review in the instant action on May 21, 1991 and published its preliminary results on February 20, 1992. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 56 Fed. Reg. 23,271 (Dep't Comm.1991); *Roller Chain, Other Than Bicycle, From Japan*, 57 Fed.Reg. 6097 (Dep't Comm.1992) (prelim. results) (*Preliminary Results*). The product at issue is "chain, with or without attachments, whether or not plated or coated, and whether or not manufactured to American or British standards, which is used for power transmission and/or conveyance." *Preliminary Results*, 57 Fed.Reg. at 6097. The period of review is from April 1, 1990 through March 31, 1991. *Id.*

Commerce investigated Sugiyama Chain, a manufacturer/exporter of roller chain, and two of Sugiyama's distribution channels (plaintiffs or Sugiyama). *Id.* One distributor, I & OC, is an unrelated trading company which sold to unrelated U.S. importers. The second distributor, Hokoku Chain Sales Co., Ltd. (Hokoku), is related to Sugiyama and sold Sugiyama's products through three distribution channels. Commerce determined the three channels, Hokoku, [ ] * (Company H) and [ ] (Company E), are related distributors. *Final Results*, 57 Fed. Reg. at 56,320. After analyzing the information before it pertaining to Sugiyama, its two distributors and their respective distribution channels, Commerce determined the following weighted-average margins: Sugiyama/Hokoku 0.38%, Sugiyama/I & OC 5.83%, and Sugiyama/Harima Enterprises/San Fernando (Japan) 0.00%. *Id.* at 56,321; *Amendment*, 57 Fed.Reg. at 58,285.

CONTENTIONS OF THE PARTIES

Plaintiffs argue a remand is necessary in the instant action to correct various errors

Commerce made in its *Final Results.* Plaintiffs claim Commerce erred in failing to grant them a level of trade adjustment. According to Sugiyama, such an adjustment is necessary because Companies E's and H's customers and I & OC are at different levels of trade. Secondly, plaintiffs argue Commerce should have based foreign market value (FMV) wherever possible on Sugiyama's sales to Companies E and H rather than Hokoku's sales.

Plaintiffs also complain Commerce failed to provide Sugiyama with adequate information in order for Sugiyama to reproduce Commerce's calculations. Because it was unable to reproduce the calculations, Sugiyama claims it cannot determine whether Commerce committed any errors in its calculations. Additionally, plaintiffs contend Commerce erroneously determined Sugiyama and Company E are related parties. Nevertheless, because Sugiyama already raised arguments with respect to these two issues in its brief in *Sugiyama I,* plaintiff is willing to defer to the Court's decision in that case. *Sugiyama Chain Co. v. United States,* 18 CIT ——, 852 F.Supp. 1103 (May 12, 1994) (*Sugiyama I* ).

Commerce maintains no level of trade adjustment is required because Sugiyama failed to establish differences in levels of trade existed and to quantify its level of trade claim. Furthermore, as Sugiyama is unable to demonstrate prices to Companies E and H are comparable to prices to unrelated parties, Commerce argues it is inappropriate to base FMV on Sugiyama's sales to Companies E and H. Moreover, Commerce claims [ ], in and of itself, does not justify the use of Hokoku's sales in deriving FMV for purchase price comparisons. Finally, Commerce maintains it properly determined Company E and Sugiyama are related parties and denies any legal obligation to provide Sugiyama with a complete set of computer printouts showing all of Commerce's calculations.

Commerce agrees with plaintiffs on two issues and requests a remand to do the following: (1) reexamine its selection of best information available for unmatched transactions and (2) eliminate the computer programming errors which resulted in differences in merchandise adjustments with respect to sales of identical models.

## STANDARD OF REVIEW

■ In an action challenging Commerce's final results, this Court must decide whether Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

■ The Court must accord substantial weight to the agency's interpretation of the statute it administers. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). "An agency's 'interpretation of the statute need not be the *only* reasonable interpretation or the one which the court views as the most reasonable.'" *ICC Indus., Inc. v. United States,* 5 Fed.Cir. (T) 78, 85, 812 F.2d 694, 699 (1987) (emphasis in original) (citation omitted).

## DISCUSSION

A. *Use of Hokoku Sales in FMV Computation*

Plaintiffs contend Commerce should have based FMV wherever possible on Sugiyama's sales to Companies E and H rather than Hokoku's sales. Plaintiffs claim Commerce should not have used Hokoku sales as a basis for comparison with Sugiyama's sales to I & OC because [ ]. According to Sugiyama, the [ ]. Because Commerce ignored this difference, plaintiffs argue, it failed to comply with 19 U.S.C. § 1677b(a)(1) (1988)'s requirement to use "such or similar" merchandise. Plaintiffs thus request the Court remand this issue to Commerce with directions to recompute the dumping margins for certain of the sales transactions. If, however, the Court does not agree Hokoku sales should be removed from the FMV database used in comparison with I & OC sales, then plaintiffs ask the Court to require Com-

merce to include the Hokoku sales in the level of trade adjustment on remand.

Defendant maintains it properly calculated FMV based on Hokoku's sales. According to defendant, the express language of 19 U.S.C. § 1677(16)(A) requires Commerce, when possible, to compare merchandise with identical physical characteristics regardless of non-physical differences. Commerce, therefore, claims [ ] is not a basis for disregarding physically identical merchandise. Moreover, defendant contends there is no record evidence supporting plaintiffs' assertion the [ ].

■ Commerce is required to determine in an annual administrative review "the foreign market value and United States price of each entry of merchandise subject to the antidumping order." 19 U.S.C. § 1675(a)(2)(A) (1988). In calculating FMV, Commerce must initially assess the price at which "such or similar merchandise" is first sold within the U.S. and then make any necessary adjustments to that price. 19 U.S.C. § 1677b(a)(1) (1988). Congress has defined "such or similar merchandise" as merchandise which fits one of three statutory categories. 19 U.S.C. § 1677(16) (1988). The appropriate category in this case defines "such or similar merchandise" as "[t]he merchandise which is the subject of an investigation and other merchandise which is *identical in physical characteristics* with, and was produced in the same country by the same person as, that merchandise." 19 U.S.C. § 1677(16)(A) (emphasis added).

Following the above statutory scheme, Commerce calculated FMV based on Hokoku's sales of "merchandise which is identical in physical characteristics with" the merchandise subject to the antidumping order. Although plaintiffs claim Commerce should not have based its FMV calculation on Hokoku's sales, they fail to cite any statute or case in support of their position that Commerce is precluded from using otherwise identical merchandise because of [ ]. The Court, therefore, holds Commerce properly applied 19 U.S.C. § 1677(16) in its calculation of FMV and denies plaintiffs' motion with respect to this issue. *See Monsanto Co. v. United States,* 12 CIT 937, 939, 698 F.Supp.

275, 278 (1988) ("Plaintiff has presented no credible argument that the literal words of [§ 1677(16) ] should be read in any other way than that suggested by ITA.").

## B. *Level of Trade Adjustment*

Plaintiffs argue Commerce erred in refusing to make a level of trade adjustment. According to Sugiyama, a level of trade adjustment is required because sales to Companies E's and H's customers are one level further down the distribution chain than sales to I & OC. Sugiyama argues, therefore, an adjustment is necessary to account for the marketing, sales, distribution and collection expenses incurred by Companies E and H. Plaintiffs complain Commerce confused plaintiffs' argument pertaining to the level of trade issue in the *Final Results.* Additionally, Sugiyama contends Commerce failed to address plaintiffs' proposal for quantifying the level of trade adjustment. Plaintiffs proposed using the difference in the prices at which Companies E and H bought merchandise from Sugiyama and the prices at which they sold the merchandise to their customers.

Defendant maintains it reasonably determined a level of trade adjustment is inappropriate. Defendant contends Sugiyama failed to establish indirect selling expenses incurred by related parties merit a level of trade adjustment and to quantify its level of trade adjustment request. Moreover, defendant claims selling expenses incurred by related parties are as a matter of law inadequate evidence for a level of trade adjustment. With respect to plaintiffs' post-preliminary results submission, Commerce argues it was not required to consider new factual information untimely submitted. Finally, Commerce counters plaintiffs' claim that it confused their argument regarding the proper level of trade comparison. According to Commerce, it properly considered and rejected the level of trade request and merely presented a "garbled characterization" of plaintiffs' argument in the *Final Results.*

■ Congress authorized Commerce to make certain adjustments when comparing

U.S. price and FMV in order to calculate dumping margins most accurately. 19 U.S.C. § 1677b(a)(4) (1988). Commerce's policy, as stated in its regulations, provides the following concerning level of trade adjustments in FMV calculations:

> The Secretary normally will calculate foreign market value and United States price based on sales *at the same commercial level of trade.* If sales at the same commercial level of trade are insufficient in number to permit an adequate comparison, the Secretary will calculate foreign market value based on sales of such or similar merchandise at the most comparable commercial level of trade as sales of the merchandise and *make appropriate adjustments for differences affecting price comparability.*

19 C.F.R. § 353.58 (1992). According to its regulation, therefore, Commerce will assess whether the information used is "at the same commercial level of trade," and if it is not, then the agency will "make appropriate adjustments for differences affecting price comparability."

 A review of the *Final Results* indicates Commerce misunderstood plaintiffs' position. Plaintiffs argued below that a level of trade adjustment is necessary "because the sales from [Companies E and H] to their customers are at a different point in the distribution channel or, in other words, a different level of trade, than the Sugiyama prices to I & OC." R.Doc. 8 at 7. Commerce attempted to respond to this argument in the *Final Results* by stating Sugiyama failed "to demonstrate that I & OC's customers are at a different level of trade than those of companies 'E' and 'H.'" *Final Results,* 57 Fed.Reg. at 56,321. In Commerce's apparent rejection of Sugiyama's argument, the agency concluded "[o]ther than Sugiyama's unsupported claim that the customers of companies 'E' and 'H' and the customers of I & OC are at different levels of trade, [Commerce has] received no information to support a conclusion that different trade levels exist in this situation." *Id.* It is evident from Commerce's response that it believed plaintiffs were arguing I & OC's customers and Companies E's and H's customers are at

different trade levels. Plaintiffs, however, argued I & OC *itself* and Companies E's and H's customers are at different trade levels. It is incumbent upon Commerce to provide an adequate rationale for its conclusions in the *Final Results.* The Court will not accept the *post hoc* rationale offered by Commerce that despite fully understanding and rejecting plaintiffs' argument, it provided a "garbled characterization" of that argument in the *Final Results.* Consequently, the Court remands this issue to Commerce with directions to consider plaintiffs' argument that they are entitled to a level of trade adjustment because Companies E's and H's customers and I & OC are at different commercial levels of trade.

Additionally, defendant's reliance on *Silver Reed* with respect to the level of trade adjustment issue is misplaced. *See Silver Reed Am., Inc. v. United States,* 13 CIT 286, 711 F.Supp. 627 (1989). *Silver Reed* did not state related party selling expenses may never be used to establish a level of trade adjustment. Based on the record before it, the Court in *Silver Reed* stated Commerce properly determined plaintiff had "complete discretion as to where to place any of its sales functions and where to account for expenses without affecting total corporate profit." *Id.* at 288–89, 711 F.Supp. at 629. Commerce made no such determination in the instant action. Rather than speculate on whether Commerce considered the precise relationship between Sugiyama and the related parties, Companies E and H, and rejected the argument based on a rationale presented in defendant's brief, the Court remands this issue to Commerce. On remand, Commerce is directed to address whether a comparison of sales to I & OC with sales by Companies E and H to their respective customers merits a level of trade adjustment.

Commerce also rejected plaintiffs' level of trade adjustment request based on "Sugiyama['s failure] to adequately quantify its claimed adjustment." *Final Results,* 57 Fed. Reg. at 56,321. Although defendant argues in its brief that selling, marketing, distribution and collection expenses of a related party cannot serve to quantify a level of trade adjustment, Commerce did not use that ra-

tionale in the *Final Results*. Because this Court holds Commerce misunderstood plaintiffs' argument below, Commerce must address the quantification issue on remand as it pertains to a comparison of Companies E's and H's customers and I & OC. The Court, therefore, need not address the quantification issue at this time.

The final question regarding the level of trade adjustment issue is whether Commerce properly rejected the data submitted in plaintiffs' March 20, 1992 Case Brief. Sugiyama argues Commerce should have accepted the data because it merely clarifies information already on the record. Defendant, on the other hand, maintains it was not required to accept factual submissions after publication of the *Preliminary Results*.

■ Parties must submit any factual information to Commerce within the time limits established by 19 C.F.R. § 353.31 (1992). This regulation provides in pertinent part

(a) *Time limits in general.* (1) [S]ubmissions of factual information for the Secretary's consideration shall be submitted not later than:

. . . .

(ii) For the Secretary's final results of an administrative review under § 353.22(c) or (f), the earlier of the date of publication of notice of preliminary results of review or 180 days after the date of publication of notice of initiation of the review. . . .

(3) The Secretary will not consider in the . . . final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit. The Secretary will return such information to the submitter with written notice stating the reasons for return of the information.

19 C.F.R. § 353.31(a)(1)(ii), (a)(3). The record indicates Sugiyama attempted to provide Commerce with factual information after publication of the *Preliminary Results*. In order to aid Commerce in meeting the statutory time limits for completing section 751 reviews, parties must submit information in a timely manner. As this Court has previously stated, "it [is] imperative the requested information be ∙ submitted within a period that allows Commerce sufficient time for ade-

quate analysis and comment while still meeting statutory deadlines." *Ansaldo Componenti, S.p.A. v. United States*, 10 CIT 28, 37, 628 F.Supp. 198, 205 (1986). The Court, therefore, denies plaintiffs' motion with respect to this point and holds Commerce properly rejected plaintiffs' submission.

## C. *Computer Printouts of Commerce's Calculations*

In *Sugiyama I*, the Court discussed the issue of whether 19 C.F.R. § 353.28 (1988) requires Commerce to provide respondents with a complete set of computer printouts of Commerce's calculations. *Sugiyama I*, 18 CIT at ———, 852 F.Supp. at 1114–1115. Section 353.28 states Commerce "will disclose the calculations performed in connection with a final antidumping duty determination. . . ." Commerce argued in *Sugiyama I* that this language does not require it to provide respondents with a complete set of computer printouts. Moreover, Commerce contended, "because it provided plaintiffs with a complete set of formulas, computer programs, analysis memoranda and sample calculations, and plaintiffs already possessed their own data, plaintiffs had everything they needed to replicate Commerce's calculations." *Sugiyama I*, 18 CIT at ———, 852 F.Supp. at 1114. The Court held Commerce's interpretation of 19 C.F.R. § 353.28 to be controlling because it was "neither plainly erroneous nor inconsistent with the regulation." *Id.* at ———, 852 F.Supp. at 1115 (citing *Asociacion Colombiana de Exportadores de Flores v. United States*, 8 Fed.Cir. (T) 126, 131, 903 F.2d 1555, 1559–60 (1990)).

■ In the instant action, as in *Sugiyama I*, Commerce supplied plaintiffs with the complete computer program, printed sample pages of the transactions used in deriving the preliminary results, and analysis memoranda. *See Final Results*, 57 Fed.Reg. at 56,321. Commerce's provision of information to Sugiyama in the instant action is consistent with its interpretation of 19 C.F.R. § 353.28 in *Sugiyama I*. Accordingly, plaintiffs' argument with respect to this issue fails and the Court holds Commerce properly refused to

provide Sugiyama with complete computer printouts of all Commerce's calculations.

### D. *Company E and Sugiyama's Relationship*

The Court has also already addressed the parties' arguments with respect to Company E's status in *Sugiyama I. See Sugiyama I,* 18 CIT at ——, 852 F.Supp. at 1111–1113. Plaintiffs contended in *Sugiyama I* that Commerce had erroneously determined Sugiyama and Company E (referred to as X in *Sugiyama I* ) are related parties pursuant to 19 U.S.C. § 1677(13)(C) (1988). *Id.* at ——, 852 F.Supp. at 1112. Commerce claimed it properly concluded Sugiyama is related to Company E based on the presence of two common directors and the fact Sugiyama provided 60% of Company E's start-up capital. *Id.* at ——, 852 F.Supp. at 1112. In response to these arguments, the Court held "Commerce may properly consider both financial and/or non-financial connections when assessing whether parties are related within the meaning of 19 U.S.C. § 1677(13)(C)." *Id.* at ——, 852 F.Supp. at 1112 (quotations and citation omitted). The Court further stated despite Sugiyama's insistence that the start-up capital was merely a loan, "[ ]" *Id.* at ——, 852 F.Supp. at 1112. The Court concluded in *Sugiyama I,* as it does in the instant action, Commerce's determination that Sugiyama and Company E are related parties within the meaning of § 1677(13)(C) is based on substantial evidence on the record.

### CONCLUSION

The Court holds Commerce properly (1) rejected Sugiyama's March 20, 1992 submission as untimely; (2) used Hokoku's sales in its calculation of FMV; (3) determined it was not required to provide Sugiyama with complete computer printouts of all its calculations; and (4) determined Sugiyama and Company E are related parties within the meaning of 19 U.S.C. § 1677(13)(C) (1988).

On remand, Commerce is directed to (1) reexamine its selection of best information available for unmatched transactions; (2) eliminate the computer programming errors which resulted in differences in merchandise adjustments with respect to sales of identical models; and (3) address whether a comparison of sales to I & OC with sales by Companies E and H to their respective customers merits a level of trade adjustment.

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** the Department of Commerce's *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 56,319 (Dep't Comm.1992) (final results), as amended by *Roller Chain, Other Than Bicycle, From Japan,* 57 Fed.Reg. 58,285 (Dep't Comm.1992) (final results), is sustained in part and remanded in part; and it is further

**ORDERED** on remand Commerce must reexamine its selection of best information available for unmatched transactions; and it is further

**ORDERED** on remand Commerce must eliminate the computer programming errors which resulted in differences in merchandise adjustments with respect to sales of identical models; and it is further

**ORDERED** on remand Commerce must address whether a comparison of sales to I & OC with sales by Companies E and H to their respective customers merits a level of trade adjustment; and it is further

**ORDERED** the remand results are due August 15, 1994. Any comments or responses by the parties to the remand are due August 29, 1994, and shall be limited to fifteen pages. Any rebuttal comments are due September 6, 1994, and shall be limited to ten pages. No extensions of time will be granted for the remand results, comments/responses or rebuttal comments; and it is further

**ORDERED** the *Final Results* are sustained in all other respects.